UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
MOSDOS CHOFETZ CHAIM INC., YESHIVA CHOFETZ    :
CHAIM INC., RABBI JAMES BERNSTEIN, MOSHE
AMBERS, RABBI  MAYER ZAKS AND RABBI ARYEH    :
ZAKS,
:

                   Plaintiffs,         :

    - against -                       :     08-CV-0156 (KMK)

THE VILLAGE OF WESLEY HILLS; THE MAYOR AND    :
BOARD OF TRUSTEES OF THE VILLAGE OF WESLEY
HILLS; ROBERT H. FRANKL, IN HIS INDIVIDUAL AND    :     **ECF CASE**
OFFICIAL CAPACITY; EDWARD B. MCPHERSON, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY; DAVID A.    :
GOLDSMITH, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY; ROBERT I. RHODES IN HIS INDIVIDUAL AND  :
FORMER OFFICIAL CAPACITY; JAY B. ROSENSTEIN, IN
HIS INDIVIDUAL AND FORMER OFFICIAL CAPACITY;    :
THE VILLAGE OF NEW HEMPSTEAD; THE MAYOR AND
BOARD OF TRUSTEES OF THE VILLAGE OF NEW    :
HEMPSTEAD; ROBERT A. MOSKOWITZ, TRUSTEE OF THE
VILLAGE OF NEW HEMPSTEAD, IN HIS INDIVIDUAL AND  :
FORMER OFFICIAL CAPACITY; THE VILLAGE OF
POMONA; THE MAYOR AND BOARD OF TRUSTEES OF    :    **NOTICE**
THE VILLAGE OF  POMONA; FORMER MAYOR           **OF MOTION**
HERBERT I. MARSHALL, IN HIS INDIVIDUAL AND    :    <u>**TO DISMISS**</u>
FORMER OFFICIAL CAPACITY; MAYOR OF POMONA,
NICHOLAS L. SANDERSON, IN HIS INDIVIDUAL AND    :
OFFICIAL CAPACITY; THE VILLAGE OF CHESTNUT
RIDGE; MAYOR AND BOARD OF TRUSTEES OF THE    :
VILLAGE OF CHESTNUT RIDGE; MAYOR OF THE
VILLAGE OF CHESTNUT RIDGE, JEROME KOBRE IN HIS  :
INDIVIDUAL AND OFFICIAL CAPACITY; HOWARD L.
COHEN, TRUSTEE, IN HIS INDIVIDUAL AND OFFICIAL    :
CAPACITY; THE VILLAGE OF MONTEBELLO; THE
MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE    :
OF MONTEBELLO; KATHRYN ELLSWORTH A.K.A.
KATHRYN GORMAN, FORMER MAYOR OF MONTEBELLO :
IN HER INDIVIDUAL AND FORMER OFFICIAL CAPACITY;
JEFFREY OPPENHEIM, MAYOR OF MONTEBELLO IN HIS  :
INDIVIDUAL AND OFFICIAL CAPACITY; JOHN DOE 1-37,
:
                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLEASE TAKE NOTICE** that upon the annexed Memorandum of Law in Support of Defendants' Motion to Dismiss, dated May 12, 2008, the exhibits annexed hereto, and upon all pleadings and proceedings had and filed herein, Defendants will move this Court, before Judge Kenneth M. Karas, United States District Judge, for an Order:

(i)    dismissing the Complaint in its entirety, with prejudice, pursuant to FRCP 12(b)(1), 12(b)(6) and 13(a), respectively, on the alternate grounds that:

(a)    the Complaint fails to state a claim upon which relief may be granted;

(b)    Plaintiffs lack standing to maintain the action;

(c)    the Complaint is barred by the applicable statute of limitations;

(d)    the Complaint it is barred under the doctrine of *res judicata* as to the Village of New Hempstead; and/or

(e)    Plaintiffs' claims were compulsory counterclaims required to be asserted in a prior case; and

(ii)    granting such other and further relief as this Court may deem just and proper.

Dated: May 12, 2008
       White Plains, New York

ZARIN & STEINMETZ

By:    S/ _____
       Michael D. Zarin (MDZ-6692)
       Jody T. Cross (JTC-1433)
       *Attorneys for Defendant Villages of*
       *Chestnut Ridge, Montebello, Wesley*
       *Hills and New Hempstead*
       81 Main Street, Suite 415
       White Plains, New York  10601
       (914) 682-7800

## <u>CERTIFICATION</u>

   This is to certify that a copy of the foregoing Notice of Motion to Dismiss was served or caused by be served by first class mail, postage prepaid, on May 12, 2008, upon the following:

       Andrew F. Pisanelli, Esq.
       Milber Makris Plousadis & Seiden, LLP
       *Attorneys for all remaining Defendants*
       3 Barker Avenue - Sixth Floor
       White Plains, New York 10601

       Joseph J. Haspel, Esq.
       Joseph J. Haspel, PLLC
       *Attorney for Plaintiffs*
       40 Mathews Street, Suite 201
       Goshen, New York 10924

       Reuben S. Koolyk
       Arnold & Porter LLP
       *Attorney for Plaintiffs*
       399 Park Avenue
       New York, New York  10022

       Andrew J. Romanow
       Buchanan Ingersoll PC
       *Attorneys for RBS Citizens, N.A.*
       50 Fountain Plaza, Suite 1230
       Buffalo, NY 14202

     By: S/ _____
         Michael D. Zarin (MDZ-6692)
         Zarin & Steinmetz
         81 Main Street, Suite 415
         White Plains, New York  10601
         (914) 682-7800

**Exhibit A**

Joseph J. Haspel, Esq. (JJH-5753)
Attorney for Plaintiffs
40 Matthews Street, Ste. 201
Goshen, NY 10924
845-294-8950

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MOSDOS CHOFETZ CHAIM INC.; YESHIVA CHOFETZ
CHAIM INC.; RABBI JAMES BERNSTEIN;
MOSHE AMBERS, RABBI MAYER ZAKS;
AND RABBI ARYEH ZAKS,

                                        PLAINTIFFS

-   VS -

THE VILLAGE OF WESLEY HILLS; THE MAYOR AND BOARD
OF TRUSTEES OF THE VILLAGE OF WESLEY HILLS; ROBERT H.
FRANKEL IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;
EDWARD B. MCPHERSON, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY; DAVID A. GOLDSMITH IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY; ROBERT I. RHODES IN HIS INDIVIDUAL
AND FORMER OFFICIAL CAPACITY; JAY B. ROSENSTEIN IN
HIS INDIVIDUAL AND FORMER OFFICIAL CAPACITY;
THE VILLAGE OF NEW HEMPSTEAD THE MAYOR AND BOARD
OF TRUSTEES OF THE VILLAGE OF NEW HEMPSTEAD ROBERT
A. MOSKOWITZ, TRUSTEE OF THE VILLAGE OF NEW
HEMPSTEAD IN HIS INDIVIDUAL AND FORMER OFFICIAL
CAPACITY;
THE VILLAGE OF POMONA; THE MAYOR AND BOARD OF
TRUSTEES OF THE VILLAGE OF POMONA FORMER MAYOR
HERBERT I. MARSHALL IN HIS INDIVIDUAL AND FORMER
OFFICIAL CAPACITY; MAYOR OF POMONA, NICHOLAS L.
SANDERSON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;
THE VILLAGE OF CHESTNUT RIDGE; THE MAYOR AND BOARD
OF TRUSTEES OF THE VILLAGE OF CHESTNUT RIDGE, MAYOR
OF THE VILLAGE OF CHESTNUT RIDGE, JEROME KOBRE IN
HIS INDIVIDUAL AND OFFICIAL CAPACITY; HOWARD L.
COHEN TRUSTEE IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY.
THE VILLAGE OF MONTEBELLO; THE MAYOR AND BOARD OF
TRUSTEES OF THE VILLAGE OF MONTEBELLO, KATHRYN
ELLSWORTH A.K.A. KATHRYN GORMAN, FORMER MAYOR OF
MONTEBELLO IN HER INDIVIDUAL AND FORMER OFFICIAL
CAPACITY; AND JEFFREY OPPENHEIM MAYOR OF
MONTEBELLO IN HIS INDIVIDUAL AND OFFICIAL CAPACITY.
JOHN DOE 1-37

                                        DEFENDANTS.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INDEX NO.

08 CIV. 0156



## **COMPLAINT**

Plaintiffs, Mosdos Chofetz Chaim, Inc. ("Mosdos"), Yeshiva Chofetz Chaim, Inc. ("Yeshiva") , Rabbi James Bernstein, Moshe Ambers, Rabbi Mayer Zaks and Rabbi Aryeh Zaks, by and through their attorneys, Joseph J. Haspel, Esq., Ferrick Lynch McCartney, and Leon Charney, Esq. as and for their complaint against Defendants, allege as follows:

## **NATURE OF THE CASE**

1.    This action brings before this Court the Villages of Wesley Hills, New Hempstead, Pomona, Chestnut Ridge and Montebello (collectively, "Villages") for their Discriminatory conduct in application of the law regarding religious uses within the Town of Ramapo ("Ramapo"), County of Rockland, State of New York.

2.    The Villages have a history of impeding the growth of the ultra-orthodox and Hasidic jewish communities (collectively, "Hasidic Communities") in violation of the Fair Housing Act and the members of the Hasidic Communities Civil Rights. In 1995, the Second Circuit Court of Appeals addressed the phenomenon of incorporating villages within Ramapo as a means to curtail the growth of the Hasidic Communities. *See, Leblanc-Sternberg v.Fletcher*, 67 F.3d 412 (2nd Cir. 1995). While the focus of the *Leblanc-Sternberg* case was the use of residential real property as synagogues, the land use issues addressed therein are similar to the issues presented herein.

3.    Since the Town of Ramapo, which is the Town in which each of the Villages is located, made efforts to amend its zoning laws to accommodate the needs of the Hassidic Communities, the Villages have found a myriad of ways to engage in discriminatory practices and use public funds to further their discriminatory agenda in violation of the civil rights of the Plaintiffs and others in the Hasidic Communities.

4.      Chofetz Chaim is a sect of Orthodox Jewry, and one of the communities which make up the Hasidic Communities.  The Plaintiffs are members of the Chofetz Chaim community and they have been affected by the Villages discriminatory practices.

5.      Plaintiffs bring this action to declare the villages conduct illegal and enjoin the Villages' conduct in connection with a five acre parcel of land which has been developed in accordance with all necessary building permits and in conformance with Ramapo's current zoning ordinances ("Kiryas Radin" f/k/a "Nike Site").  Regrettably, the Villages have engaged in a deliberate attempt to perpetuate their judicially-recognized, racially discriminatory housing practices.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. §§1343 and 2201 and 42 U.S.C. §3613 which confers original jurisdiction on federal district courts in suits to reduce the deprivation of rights, privileges and immunities secured by the laws and Constitutions of the State of New York and the United States, particularly the First and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, 42 U.S.C. §1982, 42 U.S.C. § 1985, 42 U.S.C. § 2000cc, and 42 U.S.C. § 3604.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the acts and transactions complained of occurred, and continue to occur in this District.

## PARTIES

8.      The Plaintiff Mosdos Chofetz Chaim Inc. is a religious corporation having its principal place of business located at Kiryas Radin Drive, Spring Valley NY, Town of Ramapo, County of Rockland State of New York.  Plaintiff is the owner of certain real property (the Kiryas Radin Campus) located in the Town of Ramapo, County of Rockland, State of New York

also known as Section 9, Lot No. 718 and provides housing for Orthodox Jewish Families at its premises.

9.    Plaintiff Yeshiva Chofetz Chaim, Inc. ("Yeshiva CC") is a religious corporation of the State of New York having its principal place of business located at 82 Highview Road, Suffern, New York, 10901. Town of Ramapo, County of Rockland, State of New York.

10.    Plaintiff Rabbi Aryeh Zaks is a natural person with a religious affiliation to Orthodox Jewry who resides in Monsey, New York  and one of the religious leaders of the Yeshiva CC.

11.    Plaintiff Rabbi Mayer Zaks is a natural person with a religious affiliation to Orthodox Jewry who resides in Monsey, New York  and one of the religious leaders of the Yeshiva CC.

12.    Plaintiff Rabbi James Bernstien is a natural person with a religious affiliation to Orthodox Jewry who resides in Monsey, New York  and wishes to study and live at the Yeshiva's Kiryas Radin campus for the purposes of religious exercise, speech, assembly, and instruction, and who, among others, are prevented from doing so due to the actions of the Defendants.

13.    Plaintiff Moshe Ambers is a natural person with a religious affiliation to Orthodox Jewry who resides in Monsey, New York  and wishes to study and live at the Yeshiva's Kiryas Radin campus for the purposes of religious exercise, speech, assembly, and instruction, and who, among others, are prevented from doing so due to the actions of the Defendants.

14.    Defendant Village of Wesley Hills is a municipal corporation duly formed and existing pursuant to the laws of the State of New York.

15.    Defendant Edward McPherson is a natural person who resides in Wesley Hills, New York  is the Trustee of the Village of Wesley Hills, who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

16.     Defendant Robert Frankel is a natural person who resides in Wesley Hills, New York is the Mayor of the Village of Wesley Hills who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

17.     Defendant David Goldsmith is a natural person who resides in Wesley Hills, New York is the Trustee of the Village of Wesley Hills who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

18.     Defendant Robert Rhodes is a natural person who has resided in Wesley Hills, New York is the former Trustee of the Village of Wesley Hills who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

19.     Defendant Jay Rosenstein is a natural person has resided in Wesley Hills, New York is a former Trustee of the Village of Wesley Hills who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

20.     Defendant Village of Pomona is a municipal corporation duly formed and existing pursuant to the laws of the State of New York.

21.     Defendant Herbert Marshall is a natural person who resides in Pomona, New York is the former Mayor of the Village of Pomona who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

22.     Defendant Nicholas Sanderson is a natural person who resides in Pomona, New York is the current Mayor of the Village of Pomona who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

23.     Defendant Village of New Hempstead is a municipal corporation located within the Town Of Ramapo duly formed and existing pursuant to the laws of the State of New York.

24.     Robert Moskowitz is a natural person who resides in New Hempstead, New York, and is a former Trustee of the Village of New Hempstead, in his individual and official capacity.

25.     Defendant Village of Montebello is a municipal corporation located within the Town Of Ramapo duly formed and existing pursuant to the laws of the State of New York.

26.     Defendant Jeffrey Oppenheim is a natural person who resides in Montebello, New York is the Mayor of the Village of Montebello who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

27.     Defendant Katherine Ellsworth is a natural person who resides in Montebello, New York is the former Mayor of the Village of Montebello who has acted and participated in the underlying discrimination set forth in this complaint in both her individual and official capacity.

28.     Defendant Village of Chestnut Ridge is a municipal corporation located within the Town Of Ramapo duly formed and existing pursuant to the laws of the State of New York.

29.     Defendant Jerome Kobre is a natural person who resides in Chestnut Ridge, New York is the Mayor of the Village of Chestnut Ridge who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

30.     Defendant Howard Cohen is a natural person who resides in Chestnut Ridge, New York is a trustee of the Village of Chestnut Ridge who has acted and participated in the underlying discrimination set forth in this complaint in both his individual and official capacity.

## FACTUAL BACKGROUND

31.     Mosdos is currently the owner of the Kiryas Radin Campus f/k/a the Nike Site.   It is on the Kiryas Radin site that Mosdos and the former owner Yeshiva CC has been the subject of religious discrimination in the past.

32.    Yeshiva CC is the owner of a property at 82 Highview Road in Suffern, NY.  It is the Highview Road Site that Mosdos is currently attempting to expand its center of advanced learning.

33.    Yeshiva CC and Mosdos' project (Kiryas Radin), are a singular religious community designed to include the housing of scholars, students, and others who follow the teachings of the Torah and Talmud as taught by their founder, Rabbi Israel Mayer Kagan.

34.    Rabbi Kagan founded Yeshiva Chofetz Chaim in Radin, Belarus[1] in 1864 and led it until his death in 1933.  Rabbi Kagan was recognized worldwide as the leader of world Jewry. The Yeshiva in Radin was a Torah learning community and a communal center for religious students with over 400 students.  Except for a short period of time during the Holocaust, the Yeshiva Chofetz Chaim has been continuously serving the local Jewish community.

35.    In the 1920's Rabbi Mendel Zaks married the daughter of Rabbi Kagan and joined the Rabbi Kagan as primary leader of the Yeshiva and in all other communal affairs. Rabbi Zaks incredible knowledge of the Talmud coupled with a photographic memory attracted more students to the Yeshiva and grew it greatly.

36.    The Yeshiva first incorporated in the United States in 1925.  That year, the Yeshiva sent emissaries to the United States to raise money for the operation of the Yeshiva and its multiple missions; which by this time had grown to include a Free Loan Fund, a Study Program for Young Married Adults (Kolel Kodoshim), a Charity Fund for the Poor, a Burial Society, a Marriage Assistance Fund, a Publication Fund, Day Schools, and many other community based programs.

37.    Upon Rabbi Kagan's death in 1933 Rabbi Mendel Zaks began leadership of the Yeshiva.  He continued Rabbi Kagan's record of training up the best and brightest Jewish

---

[1] When the Yeshiva was founded, Radin was part of Poland, but the territory is now part of Belarus.

scholars: scholars who founded well-respected Yeshivas elsewhere across the world. But like many other times in the life of the Jewish people, the Yeshiva was forced to flee.

38.    In 1941, the Yeshiva was closed and its members forced to flee the town of Radin. Rabbi Zaks escaped to the United States and restarted the Chofetz Chaim Yeshiva in New York by gathering survivors of the Holocaust who came to the United States shores (to escape persecution). In 1950, Rabbi Mendel Zaks' son, Rabbi Gershon Zaks—who also survived the war—joined his father in the United States. A Kolel and school were reestablished. Together, the two managed to raise up the Yeshiva and restore some of its prior prominence.

39.    The Yeshiva moved to Suffern, New York in the 1960's and settled in its current 14 acre location. The Yeshiva flourished at its location. However, nearly fifty years have passed at the present site and growth must be accommodated. The current needs of the Plaintiffs outstrip the ability of the Yeshivas to deliver, and thus it needs to expand.

40.    The Kiryas Radin Campus is a "Yeshiva" (religious educational institution and center for religious activity and prayer) physically located near the boundaries of the Village of New Hempstead, New York, though not a part of the incorporated Village. It was assumed back into the unincorporated Town of Ramapo (Town) pursuant to agreement and stipulation between the Village, the Town, and the former owner Yeshiva Chofetz Chaim Kiryas Radin, Inc. in a federal court action entitled *Yeshiva Chofetz Chaim v. The Village of New Hempstead*.

41.    The Nike site is critical to the continued religious practice of the Plaintiffs. The Construction includes a synagogue, a prayer/study hall, classrooms, a library/Talmudic research center, kitchen/dining facilities, living facilities, and a Mikvah. The residential facilities consist of two-story attached units utilized in two-bedroom and four-bedroom layouts. The entire site will be enclosed with fencing gates, and partition walls. Furthermore, the site has visually pleasing buffers to improve and enhance the beauty of the site.

42. The operational plan calls for an almost entirely self-sufficient facility. The site is designed with full automatic fire sprinkler systems. The Plaintiffs must provide for their own sanitation, and will be responsible for all road maintenance, snow removal, and upkeep of the facilities. Additionally, over one hundred children will be living in the site premises. The education for these children will be provided at the Yeshivas in the area. Therefore, the children will place no strain on the public school system.

43. This proposed development is consistent with their religious teachings. Jewish religion and custom teaches that Yeshivas are a necessary and vital part of the Jewish life. Yeshivas serve as communities of learning for intense Torah study, charitable works, outreach, and continuous religious practice. According to the Plaintiffs' bona fide religious beliefs, everyone in the learning community, from spouses to children, benefits from the intense religious atmosphere. The creation of a Yeshiva and its communal setting furthers the teachings of the Torah, the goals of the Jewish religion, and it is central to the religious vision of the Plaintiffs.

## THE TOWN AND THE VILLAGES

44. The Town of Ramapo's Jewish population including Orthodox Jews has grown substantially and now represents approximately 50% of the population of the unincorporated Town of Ramapo. While the Town of Ramapo has attempted to work with the growth and expansion of the Orthodox and Hasidic Jewish communities, the Villages have consistently illegally acted to restrain their growth.

45. Within the Town of Ramapo in the County of Rockland, a 'village incorporation movement' began in the late 1970's, when orthodox and Hasidic Jewish families began to reside in the Town of Ramapo in increasing numbers.

46.    In opposition to the influx of Orthodox and Hasidic Jews within the Town of Ramapo, residents began to establish villages for the purpose of controlling who resided within each village. Within the Town of Ramapo, the Villages of Montebello, Chestnut Ridge, Wesley Hills and New Hempstead were formed as part of this trend.

47.    The purpose of the village formation movement was to exercise control over zoning and planning and not provide for or otherwise accommodate influx of people the local villages deemed undesirable.

48.    The attitude towards the Orthodox and Hasidic Jewish communities in the area has been the platform of the local politicians who have run their campaigns on platforms of containing the spread of the Orthodox and/or Hasidic Jewish communities.

49.    Recognizing the need to undertake a review of the Master Plan, so that natural growth could continue, in 2001 the Town of Ramapo initiated a review of its Master Plan.

50.    When the Town of Ramapo indicated its desire to begin a revision of the Master Plan the Villages took their position that no new construction could take place in the Town.

51.    In 2000, a new Supervisor was elected who undertook a reevaluation of the needs of the Town. This new Supervisor, Christopher St. Lawrence, supported a Master Plan that addressed the needs of the growing community and its surrounding regions (the "Master Plan").

52.    The Master Plan allowed for the inclusion of multi-family zones and accessory apartments that would accommodate the needs of the Hassidic Communities.

53.    During its Master Plan review, the Town of Ramapo learned that there is a distinct population in the jurisdiction that are in need for adequate housing. Many of them are married and single students of the several large religious educational centers in the Town of Ramapo. These are Jewish students who continue their religious studies after marriage. As married couples studying Jewish teachings full-time, these students do not have much income.

The Yeshivas wanted to build adequate living quarters for these students that would benefit them for their physical living needs, and assist them in reaching their spiritual goals on their campuses.  However, there were no Town codes available to set guidelines for this type of construction.  In order to accommodate any expansion of the Yeshivas, either a variance had to be granted or the zoning code had to be amended to allow multi-family housing to be built in the Town of Ramapo.

54.     This Master Plan draft was initially promulgated in 2001 to address the needs of the entire Town of Ramapo, including those people who struggle economically.  Multi-family zones and accessory apartments—necessary for poor and low-income families—were allowed, but only in areas far from any villages.   One large area initially zoned for single-family homes on two acres was rezoned to one acre zoning so as to be in conformance with the surrounding areas.  Over one thousand acres of land were set aside as open space and park areas.  The Town adopted a new comprehensive plan following completion of an environmental review on or about January 29, 2004.

55.     The approval of the Comprehensive Plan did not make any actual zoning changes in any area of the town.  The Comprehensive Plan is simply a policy statement about goals, plans, etc.  The areas selected for Multi-Family District zoning were recommended because they contain characteristics that make them suitable for such zoning (e.g., easy access to major roads).  Because most of the land in the Town of Ramapo falls into either dedicated parkland or one of the incorporated villages, the Town only has zoning control for less than 30% of the land in the entire town lands.

56.     During this period of review and comment on the Comprehensive Plan, the Villages who complained about the Comprehensive Plan based upon issues of density still approved the development of over one thousand multi-family, high-density units in their own

respective villages without any alarm over infrastructure or sewer capacity. In addition, an additional 1,200 units north of the Town of Ramapo are being, or have been connected to the town's infrastructure. In addition, over eighty senior units were approved by the Villages throughout Ramapo without any opposition. These newly approved projects were not a concern to the Villages, as they are residential units not for Orthodox or Hasidic Jews.

57.    The Yeshiva approached the Town with a site plan for approval on the campus at the former Nike missile base in 2001. The Plaintiff requested the Town allow expansion of the religious Yeshiva Campus pursuant to the then newly passed RLUIPA legislation. The Town accepted the proposed project under RLUIPA provided that the development could be reconciled with all applicable Federal, State and Local Law.

58.    In September of 2002, the Ramapo Town Attorney provided one of the plaintiffs a letter that recapped the property history and approved the proposed Yeshiva project: "The proposed plan as projected is a genuine religious project in furtherance of religious goals and as such would meet all the requirements for such religious land use."

59.    Based upon the recommendation given by the Town of Ramapo's Attorney, a site plan under the R15 zoning bulk table was submitted. The proposed site plan contained a unit count less than what was permitted under R15 zoning for seniors, which was the most generous zoning in the Town at that time. After submitting the plans for review the Town Attorney's office and the building department requested that the project be redesigned to fit within the dormitory zoning code.

60.    At great expense and delay, the Yeshiva redesigned the site to accommodate the Town's requests. Only after submitting their redesigned Yeshiva site plans did the Community Design Review Committee (CDRC) inform them that the dormitory zoning ordinance does not fit housing for married students.

61.     This project includes spaces for married students, and single students. According to the Chofetz Chaim's teachings, life at the Yeshiva is central to the student's religious experience and includes many rituals and constant religious practice on a 24/7 basis in the home areas for the students, their spouses, and their children. This religious community would be free from the outside secular influence of mass media, such as television viewed as immoral under the religious Chofetz Chaim teaching.

62.     Inclusion of the "Adult Married Student" housing classification in the Town's Comprehensive Plan, notwithstanding its limited extent, met with vehement opposition from Villages.

63.     The Town used a Generic Environmental Impact Statement (GEIS) in preparation of putting together a Comprehensive Plan. Pursuant to the GEIS, public opinions (including those from the Villages) were thoroughly solicited and considered over the course of three years.

64.     The Villages, realizing that the Master Plan allowed for the growth of the Orthodox and Hasidic communities, started an organized campaign to defeat and block the Master Plan and the Adult Student Housing law from adoption.

65.     The individual defendants were behind the Villages campaign to defeat Plaintiffs, and other members of the Hasidic Community, in their desire to extend their communities into the Villages' jurisdiction.

66.     Defendants used racist remarks and racial stereotyping to install fear and misinformation in regards to the passage of the Master Plan. Articles were written and speeches were given, deriding the Orthodox and Hasidic Communities, including Chofetz Chaim, because of their religious beliefs and religious mode of dress. These articles and statements were made by officials of the Villages acting individually and in their official capacity.

67.    The Defendants mounted a concerted effort to subvert and dominate the Town of Ramapo meetings, in their opposition to passage of the new Comprehensive Plan.

68.    On June 15, 2004 at a special meeting, Town adopted Resolution No. 2004-358, finding no significant adverse impact on the environment in permitting Adult Student Housing, and issued a Negative Declaration. The Town subsequently amended the zoning code to permit Adult Student Housing as a conditional use, to be known as Local Law #9-2004.

69.    The Town passed the Adult Student Housing law to address the need for a guidepost and planning tool for secular educational institutions and religious institutions in planning campus development. The law was passed with the understanding that the law will not address all religious needs and some religious institutions will need to obtain variances from the Town zoning board for any deviations from this zoning law.

70.    Subsequently, the Yeshiva redesigned the project to conform to this new student housing code. The Plaintiff submitted its revised plans to the town for site plan approval. Included with this plan was a list of several matters requiring zoning board variances.

71.    Once the Villages learned that Mosdos intended to utilize the law (including RLUIPA) to build housing for its students, the Villages filed suit to stop the promulgation of the law. Although the pretext of the lawsuit is environmental concerns, the goal of the Village is to prevent the spread of the Orthodox and Hasidic communities through intimidation.

72.    The individual defendants were instrumental in the Villages' decisions to retain counsel for the purpose of keeping the Hasidic Community, including Plaintiffs from encroaching upon their neighborhoods.

73.    The retention of counsel and the prosecution of litigation in the name of the Villages was a discretionary act of the individual defendants and done to further their personal agendas, albeit done under the guise of proper municipal action.

74.    At the time the individual defendants took their action in the name of the Villages, they were aware of Plaintiffs rights, including, but not limited to the right to the free exercise of religion, their right under the Fair Housing Act and their rights under RLUIPA.

75.    The actions of the individual Defendants, under color of municipal authority, did not have any effect beyond its intended target, *i.e.* the Hasidic Community, including Plaintiffs.

76.    The Defendants have continually attempted to block any attempts of the Yeshiva to improve its Nike / Kiryas Radin Site campus according to their religious beliefs. The Defendants have gone so far as to contact federal and state agencies with contrived environmental concerns. When the federal agencies dismissed those complaints, the Defendants continued to assert environmental problems, with no basis in fact or law.

77.    The Villages' challenge to the Town's Recent Enactments, which are set forth in the instant lawsuit, was designed to create a forum to impede the development of Mosdos's Real Property through the use of the judicial process.

**THE VILLAGE OF NEW HEMPSTEAD**

78.    Plaintiffs repeat and reiterate the allegations contained in Paragraphs 1 through 77 as if fully set forth herein.

79.    The Village of New Hempstead was incorporated to, *inter alia,* provide local zoning regulations inconsistent with the religious practices of the Orthodox and Hasidic Jewish communities.

80.    Kiryas Radin and the Village of New Hempstead were adversary parties in a litigation which came to fruition after the Kiryas Radin property was purchased from the United States government (the "Prior New Hempstead Litigation").

81.    At or around the time of the purchase of the Nike (Kiryas Radin) property, officials of New Hempstead informed various governmental agencies, including *inter alia*, the

Occupational Safety & Health Administration, the U.S. Army Corps of Engineers, and the

Environmental Protection Agency, that the subject property was contaminated with lead and

friable asbestos (the "Federal Environmental Representations").

82.    The Federal Environmental Representations were false.

83.    The Federal Environmental Representations were made to thwart the Yeshiva's

development and religious use of the subject property.

84.    In addition to the Federal Environmental Representations, officials of the Village

of New Hempstead informed the East Ramapo Local School Board that the work involved in

renovating the property would endanger the young lives attending the Colton School, which

School's property is in close proximity to Kiryas Radin (the "Local Representations").

85.    The Local Representations were false.

86.    The Local Representations were made to thwart the Yeshiva's development and

religious use of the subject property.

87.    As a result of the Local Representations, the Colton School was closed creating

and atmosphere of animosity between the Yeshiva and local residents.

88.    In addition to the Federal Environmental Representations and the Local

Representations, officials of New Hempstead informed the New York State Department of

Environmental Conservation ("DEC") that the Kiryas Radin property was unsafe due to the

presence of asbestos (the "State Representations").

89.    The State Representations were false.

90.    The State Representations were made to thwart the Yeshiva's development and

religious use of the subject property.

91.    The DEC evaluated the property and found no merit behind New Hempstead's

Claims.

92.     This Federal Environment Representations, the Local Representations and the State Representations had the effect of chilling community relations and creating an environment of fear and hatred towards the Yeshiva and the local Hasidic community.

93.     Within the Prior New Hempstead Litigation, the parties stipulated fact that the Kiryas Radin property was not subject to the regulations of the Village of New Hempstead and was only subject to the codes of the Town of Ramapo.  The Stipulation further provided for the continued jurisdiction of the District Court to enforce the letter and spirit of the Stipulation's terms.

94.     Notwithstanding the Prior New Hempstead Litigation, and the determinations that there was no environmental concerns at the Kiryas Radin property, on or about December 3, 2004, New Hempstead contacted the Planning Board of the Town of Ramapo and stated that it was their understanding "that the buildings in question have, or may contain asbestos." (the "Continued Representations").

95.     The Continued Representations were false.

96.     The Continue Representations were made to thwart the Yeshiva's development and religious use of the subject property.

97.     Through the Continued Representations and other actions, the Village of New Hempstead has continually engaged in a pattern of behavior to keep out the Plaintiffs and 'their kind' for fear that the Plaintiffs were 'undesirable' people.

98.     New Hempstead's zoning is designed to create enormous difficulty for ultra religious and Hasidic Jews to reside within its boundaries.

**VILLAGE OF POMONA**

99.     Plaintiffs repeat and reiterate the allegations contained in Paragraphs 1 through 98 as if fully set forth herein.

100.    The Village of Pomona was incorporated to, *inter alia,* provide local zoning regulations inconsistent with the religious practices of the Orthodox and Hasidic Jewish communities.

101.    The Defendant Village of Pomona has enacted laws that are so restrictive that they prevent Yeshivas of any form or kind from coming into their jurisdiction. These laws restrict development to the point of unfairly discriminating against people of the Jewish faith because of their religion.    These restrictions are the subject of a lawsuit entitled *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona,* which is presently pending in the United States District Court for the Southern District of New York (Case No.07-6304).

102.    The Code of the Village of Pomona is zoned exclusively for single family residential housing. There are no zoning provisions that allow for churches, or other religious development within their jurisdiction. According to the Village of Pomona Code Book, "[t]he entire area of the Village of Pomona is hereby designated as a residential district with a minimum of 40,000 square feet per lot, hereinafter referred to as the "R-40 District."

103.    This purposeful exclusion serves to keep out 'undesirable' people from the neighborhood.    The Village of Pomona has chosen to impose and implement a land use regulation that totally excludes religious assemblies from a jurisdiction. Further, it unreasonably limits religious assemblies, institutions, or structures within their jurisdiction.

104.    Additionally, the Village of Pomona and its leaders in the State Court action is in concert with the other Plaintiffs in that action. The goal of the litigation is to prohibit the Town of Ramapo from enacting its Master Plan which would allow for the development of Yeshivas.

105.    The Village of Pomona along with the several Defendant villages commenced a lawsuit in the Supreme Court of the State Of New York in Westchester to vacate and set aside the Master Plan of the Town in May 2004.    The Defendants, realizing that the Master Plan

allowed for the growth of the ultra orthodox and Hasidic community, started an organized campaign to defeat and block the Master Plan from adoption.

**VILLAGE OF WESLEY HILLS**

106.    Plaintiffs repeat and reiterate the allegations contained in Paragraphs 1 through 105 as if fully set forth herein.

107.    The Village of Wesley Hills was incorporated to, *inter alia,* provide local zoning regulations inconsistent with the religious practices of the Orthodox and Hasidic Jewish communities.

108.    During much of the times germane to this lawsuit, Robert Rhodes was a Trustee of Village of Wesley Hills and as such spoke for the Village.

109.    During his tenure as Village Trustee, Robert Rhodes ("Rhodes") advocated fertility testing and complained about the birth rate of religious groups within the Town of Ramapo. At one point, Robert Rhodes advocated fertility testing of the local Jewish population in order to gauge how fast the Hasidic Jewish population will grow. In attempting to defend himself Defendant Rhodes stated:

> The village's own consultant estimates that the village is growing at the rate of 5.9 percent a year! You may recall that I had estimated that the Hasidic community in Rockland is growing at the rate of 100 percent a decade. Why the modest discrepancy? (Six percent doubles in 12 years, not ten years.) I suspect that there is no in-migration at Kiryas Joel. But this tells us that even without immigration that a Hasidic community can expect to almost double in size in ten years.
>
> You may recall that when I suggested to the county legislature that it hire a competent demographer to look at our own population trends our good friend, the vicious county legislator and Ramapo Finance Director Ian Schoenberger, suggested my name should be Joseph Goebbels. No one on the legislature chastised him publicly, or apologized privately to me. Obviously, this august body

cannot be counted upon for responsible planning.[2]

110.    Wesley Hills through Rhodes, has been a force in the creation of "The Preserve Ramapo" organization ("Preserve Ramapo").

111.    Preserve Ramapo is a political organization formed to create separation from and feigned plausible deniability between the elected officials advocating against the ultra Orthodox / Hasidic communities and the municipal government, *i.e.* the Village of Wesley Hills.

112.    As an indication of the unity between Wesley Hills and Preserve Ramapo, Preserve Ramapo has used, without cost, the Village of Wesley Hills Town Hall for its political purposes.

113.    In addition, Wesley Hill participates in Preserve Ramapo's fund raising, including receipt of donations earmarked for Preserve Ramapo activities at the Village of Wesley Hills municipal building.

114.    At all times relevant herein the Preserve Ramapo arm of Wesley Hills has sought, under color of local law, to deny the Plaintiffs the right to utilize their own property for the religious purposes intended.   Preserve Ramapo literature has stated:

> Preserve Ramapo is a town-wide coalition of Ramapo citizens from every ethnic, religious, economic and political party affiliation. We began as a grass roots effort to fight the Town's Master Plan for land use which proposed widespread high-density housing throughout Ramapo. Realizing our Town Board was more concerned with catering to developers and special interest groups than in representing the interests of ALL Ramapo residents, we launched a full-out effort to stop the Town Board from destroying our Town.
>
> Thousands of people became involved and spoke out against the Master Plan at many public hearings, yet our Town Board passed the Plan anyway. Why? Because our Town Board cares more about the special interest groups that will benefit from this Plan (and their bloc vote) than they care about the majority of Ramapo residents.

---

[2] Robert Rhodes, Save Ramapo: An Account of the Cabal that Controls Politics in the Town of Ramapo, *online at*: http://www.saveramapo.blogspot.com/, Aug. 10, 2004.

The Town is now in the process of scheduling Zoning Board hearings to adopt the new zoning for the Master Plan. No area of town will be untouched. We all will be facing massive increased housing density in our neighborhoods as a result of this Master Plan. We do not have the water, roads, sewers and schools to sustain this kind of development.

No wonder our villages are suing the Town. Seven Ramapo villages (Wesley Hills, Chestnut Ridge, Montebello, Suffern, Airmont, Sloatsburg and Pomona) are suing the Town for the irresponsible environmental consequences that the new Master Plan will bring upon the people of Ramapo.

115.    Rhodes further stated:

"In the four years since RLUIPA was passed the law has been cited successfully to allow the construction and expansion of houses of worship in many parts of the United States. Its opponents have criticized the law as both an intrusion on local zoning and a bludgeon used to intimidate municipalities which, under the law, are forced to pay the legal costs of religious organizations that win RLUIPA lawsuits.

RLUIPA has been most controversial where it has been cited in order to allow other activities carried out by religious organizations. The response of federal courts has varied from court to court. In some cases the force of RLUIPA has been confirmed while in other cases federal courts have held either that the activity is not protected under RLUIPA, or that RLUIPA is a violation of the Establishment Clause of our Constitution's First Amendment.

In Ramapo RLUIPA was used by our town board as the legal justification for its new "Adult Student Housing Law" (ASH). Michael Klein, our town attorney, informed the town board that under RLUIPA it could not prevent religious institutions from creating "Adult Student Housing" connected to schools providing "post-secondary education." The first school to cite the law in its application to build apartment houses in a single family residential district is Kiryas Radin.

* * *

This ruling suggests that Ramapo's Adult Student Law will not be upheld in New York unless or until the Supreme Court of the United States decides otherwise. This has not discouraged Dennis Lynch, Kiryas Radin's attorney, from invoking the law in two different arenas.

Four villages, including my village of Wesley Hills, have sued to prevent the implementation of ASH. They brought the case in the New York Supreme Court where they argue that when Ramapo passed ASH it made a variety of procedural, and substantive errors. Dennis Lynch asked the

federal district court to accept the case under RLUIPA. The federal court rejected his request and the case is now back in the New York State Supreme (lower). ...

116.    In addition to Mr. Rhodes, the Mayor and other Trustees, including Robert Frankel, Edward McPherson, Jay Rosenstein, and David Goldsmith have all taken part in this effort to restrict the Orthodox/Hasidic Jewish population in the Town of Ramapo and its environs.

117.    This purposeful exclusion serves to keep out ultra religious and Hasidic people entirely from the Village of Wesley Hills, and it has chosen to impose and implement a land use regulation that is design to repel totally excludes religious assemblies from a jurisdiction.

## VILLAGE OF CHESTNUT RIDGE

118.    Plaintiffs repeat and reiterate the allegations contained in Paragraphs 1 through 117 as if fully set forth herein.

119.    The Village of Chestnut Ridge was incorporated to, *inter alia,* provide local zoning regulations inconsistent with the religious practices of the Orthodox and Hasidic Jewish communities.

120.    The Village of Chestnut Ridge and its leadership have participated with the other Villages in the campaign to stop the Hasidic Community from encroaching upon their jurisdiction.

## VILLAGE OF MONTEBELLO

121.    Plaintiffs repeat and reiterate the allegations contained in Paragraphs 1 through 120 as if fully set forth herein.

122.    The Village of Montebello was incorporated to, *inter alia,* provide local zoning regulations inconsistent with the religious practices of the Orthodox and Hasidic Jewish communities.

AS AND FOR A FIRST CAUSE OF ACTION
(Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982.)

123.     Plaintiffs repeat and reallege paragraphs 1 through 122, as if fully set forth

herein.

124.     The Defendants' discriminatory practices, motivated by malice and/or callous

disregard for the rights of the Plaintiffs, deprive the Plaintiffs of their right to use their property i

on the basis of race, national origin and familial status in violation of the Civil Rights Act of

1866, 42 U.S.C. §1982.

AS AND FOR A SECOND CAUSE OF ACTION
(Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.)

125.     Plaintiffs repeat and reallege paragraphs 1 through 122, as if fully set forth

herein.

126.     The Defendants' discriminatory practices, motivated by malice and/or callous

disregard for the rights of the Plaintiffs, deprive the Plaintiffs of their right of equal access to

housing under color of law in violation of the Federal Civil Rights Act of 1871. 42 U.S.C. §1983.

AS AND FOR A THIRD CAUSE OF ACTION
(Violation of the Equal Protection Clause of the Fourteenth Amendment to the
Constitution of the United States.)

127.     Plaintiffs repeat and reallege paragraphs 1 through 122, as if fully set forth

herein.

128.     The Defendants' discriminatory practices, motivated by malice and/or callous

disregard for the rights of the Plaintiffs, deprives the Plaintiffs of their rights under the Equal

Protection Clause of the United States Constitution with regard to practicing their religion.

AS AND FOR A FOURTH CAUSE OF ACTION
(Violation of the First Amendment to the Constitution of the United States.)

129.     Plaintiffs repeat and reallege paragraphs 1 through 122, as if fully set forth

herein.

130.    Defendants have conspired to selectively, discriminatorily and improperly deny f

Plaintiffs' right to the Free Exercise of Religion as guaranteed by the First Amendment to the

United States Constitution.

131.    The Defendants unlawful aim is to prevent Plaintiffs from residing in proximity to

or in the Defendant's Villages because the Plaintiffs' different religious belief system.

132.    As a direct and proximate result of the above-referenced violations of Plaintiffs'

First Amendment rights by Defendants, Plaintiffs have suffered and continue to suffer substantial

losses. The amount of such losses shall be determined at trial, but in no event less than

$100,000,000.00 jointly and severally. .

AS AND FOR A FIFTH CAUSE OF ACTION
(Violation of the First Amendment to the Constitution of the United States.)

133.    Plaintiffs repeat and reallege paragraphs 1 through 122, as if fully set forth

herein.

134.    Defendants have conspired to selectively, discriminatorily and improperly

violated Plaintiffs' right to Free Assembly as guaranteed by the First Amendment to the United

States Constitution. The Defendants' actions were done in order to prevent Plaintiffs free

assembly for religious purposes within or in close proximity to their jurisdiction.

135.    As a direct and proximate result of the above-referenced violations of Plaintiffs'

First Amendment rights by Defendants, Plaintiffs have suffered and continue to suffer substantial

losses. The amount of such losses shall be determined at trial, but in no event less than

$100,000,000.00 jointly and severally.

AS AND FOR A SIXTH CAUSE OF ACTION
(Violation of the New York State Constitution)

136.    Plaintiffs repeat and reallege paragraphs 1 through 122, as if fully set forth

herein.

137.    The Defendants have conspired to selectively, discriminatorily and improperly, violated of Plaintiffs' right to the Free Exercise of Religion as guaranteed by Article I, § 3 of the New York Constitution. The Defendants actions have both the motive and intent to discriminate against the Plaintiffs because of their religious preference.

138.    As a direct and proximate result of the above-referenced violations of Plaintiffs' rights by Defendants, Plaintiffs have suffered and continue to suffer substantial losses. The amount of such losses shall be determined at trial, but in no event less than $100,000,000.00 jointly and severally.

AS AND FOR A SEVENTH CAUSE OF ACTION
(Violation of the New York State Constitution)

139.    Plaintiffs repeat and reallege paragraphs 1 through 122, as if fully set forth herein.

140.    The Defendants have conspired to selectively, discriminatorily and improperly, violated  Plaintiffs' right to the Equal Protection of the law as guaranteed by Article I, § 11 of the New York Constitution. The Defendants actions have both the motive and intent to discriminate against the Plaintiffs because of their religious preference.

141.    As a direct and proximate result of the above-referenced violations of Plaintiffs' Constitutional rights by Defendants, Plaintiffs have suffered and continue to suffer substantial losses. The amount of such losses shall be determined at trial, but in no event less than $100,000,000.00 jointly and severally.

AS AND FOR A EIGHTH CAUSE OF ACTION
(Violation of § 40-c of the New York Civil Rights Law)

142.    Plaintiffs repeat and re-allege paragraphs 1 through 122 as if fully set forth herein.

143.    Defendants have selectively, discriminatorily and improperly applied the laws of the State of New York in violation of Plaintiffs' right to the Equal Protection of the law as guaranteed by the New York Civil Rights Law.  The Defendants' actions were done in order to prevent Plaintiffs from obtaining proper use of their property via the local zoning law in violation of the Plaintiff's constitutional rights.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)    A permanent injunction restraining Defendants, their officers, agents, employees, and attorneys from enforcing or endeavoring to prohibit Plaintiffs from using their property in the Town of Ramapo, New York as a place of worship;

(b)    Award compensatory damages against Defendants in favor of Plaintiffs as the Court deems just for the loss of Plaintiffs' free exercise of religion, freedom of speech, freedom of assembly, deprivation of Plaintiffs' right to equal protection and due process under the laws, and expenses incurred by Plaintiffs and caused by the Zoning Ordinance and Defendants' actions;

(c)    An award to Plaintiffs of full costs and attorney's fees arising out of this litigation; and

(d)    Such other and further relief as this Court may deem just and appropriate.

DEMAND FOR JURY
Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs hereby demand a trial by jury in this action of all issues so triable?


January 4, 2008                          Respectfully submitted,

                                         _____
                                         Joseph J. Haspel (JJH-5753)
                                         *Attorney for Plaintiffs*
                                         40 Matthews Street
                                         Suite 201
                                         Goshen, New York  10924
                                         845-294-8950

**Exhibit B**

AO 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

SOUTHERN _____ DISTRICT OF _____ NEW YORK

YESHIVA COFETZ CHAIM RADIN, INC.,
ISRAEL GRUENER and BEREL SHAKOVIN

             Plaintiffs

## SUMMONS IN A CIVIL ACTION

      V.

CASE NUMBER:

THE VILLAGE OF NEW HEMPSTEAD BY
ITS BOARD OF TRUSTEES OF THE VILLAGE
OF NEW HEMPSTEAD, LAWRENCE DESSAU,
individually and as Mayor, WILLIAM
MORIARITY, individually and as Deputy
Building Inspector

             Defendants

**97 CIV. 04021**

**JUDGE JONES**

TO: (Name and Address of Defendant)

    THE VILLAGE OF NEW HEMPSTEAD BY ITS BOARD OF TRUSTEES OF THE VILLAGE
    OF NEW HEMPSTEAD
    8 Old Schoolhouse Road, New City NY 10956

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

    DORFMAN LYNCH & KNOEBEL
    51 North Broadway
    Nyack, New York 10960

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint.

RECEIVED

JUN - 3 1997

NE... ...EAD

## JAMES M. PARKISON

CLERK

DATE     JUN 8 1997

*MELVIN PRICE*

BY DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK    97 CIV. 04021

------------------------------------------X

YESHIVA CHOFETZ CHAIM RADIN, INC.,
ISRAEL GRUENER, and BEREL SHAKOVIN,

                         Plaintiffs,

           -against-

THE VILLAGE OF NEW HEMPSTEAD BY ITS
BOARD OF TRUSTEES OF THE VILLAGE
OF NEW HEMPSTEAD, LAWRENCE DESSAU,
individually and as Mayor, WILLIAM
MORIARITY, individually and as Deputy
Building Inspector,

                  Defendants.

------------------------------------------X

**JUDGE JONES**

**COMPLAINT**

97 CIV.

Trial by Jury
Demanded

JUN - 3 1997
USDC-WP-SDNY

        Plaintiffs **YESHIVA CHOFETZ CHAIM RADIN, INC., ISRAEL GRUENER and BEREL SHAKOVIN** by their attorneys DORFMAN LYNCH & KNOEBEL, ESQS., as and for their Complaint allege as follows:

### NATURE OF ACTION

        1. This action is brought by residents of the Town of Ramapo, County of Rockland, State of New York, who are ultra-Orthodox Jews and a non-profit religious corporation, to obtain redress against the ongoing, invidiously discriminatory, disparate and selective treatment by Defendants and the conspiracy formed by the Defendants.

        2. The discriminatory, disparate and selective treatment has the purpose and effect of directly depriving Plaintiffs of their constitutional and statutory rights.

        3. Defendants are the Board of Trustees of the

c:\DISTRICT.CT\ZAK.COM

1

Village of New Hempstead as well as its Mayor and Building Inspector and officials of the Village of New Hempstead who have acted in concert to selectively prosecute, engage in bad faith prosecutions, all denying Plaintiffs Equal Protection, Substantive and Procedural Due Process and the right to be free from unlawful discrimination.    In furtherance of this discriminatory scheme the Defendants have selectively enforced their laws and maliciously prosecuted certain Plaintiffs while at the same time failing to provide in its zoning code any provision for fair housing or multi-family dwellings, despite the clear and apparent need in the region and Plaintiffs' religious community for such housing for individuals who must gather for worship and live close to places of worship and schools.

4. Defendants unconstitutional conduct should be declared unlawful, permanently enjoined and remedied by an appropriate award of monetary damages, and Defendants and all those acting in concert with them should be enjoined from performing any and all acts in furtherance of their acts depriving Plaintiffs of constitutional rights under the law.

5. The Village Zoning Code for its failure to provide fair housing should be declared unconstitutional.

## JURISDICTION

6.    Jurisdiction of this Court is based upon 28 U.S.C. §1331 and §1343(a).

7.    This action is brought pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution; the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986 and 1988; the Fair Housing Act, 42 U.S.C. §§ 3604 and 3612; Article I, §§ 1, 3, 8, 9 and 11 of the New York State Constitution, § 40-C of the New York Civil Rights Law; and §291 of the New York Executive Law.

8.    Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

9.    Venue is proper under 28 U.S.C. §1391(b) in that the Defendants reside and the claims alleged herein arise in this Judicial District.

## PARTIES

10.    The individual Plaintiffs are all ultra-Orthodox Jews who either reside or intend to reside at property known as Town of Ramapo Tax Map designation Section 9, Lot 71B, located in the Village of New Hempstead, County of Rockland, State of New York or intend to provide housing for ultra-Orthodox Jewish Families at the premises;

a. An officer of Plaintiff YESHIVA, RABBI ISRAEL MEYER ZAKS (hereinafter referred to as "RABBI ZAKS) is

a resident of the County of Rockland, State of New York.

b.   Plaintiff YESHIVA CHOFETZ CHAIM RADIN, INC. is a religious corporation having its principal place of business located at 82 Highview Road, Town of Ramapo, County of Rockland State of New York and is the listed owner in a March 14, 1997 deed of certain real property in a located in the Town of Ramapo, County of Rockland, State of New York also known as Section 9, Lot No. 71B (the "premises").

c.   The Plaintiffs ISRAEL GRUENER and BEREL SHAKOVIN are ultra-Orthodox Jews and are residents of the Town of Ramapo who reside or intend to reside at the premises.

11.   The Defendants include THE BOARD OF TRUSTEES OF THE VILLAGE OF NEW HEMPSTEAD, LAWRENCE DESSAU and WILLIAM MORIARITY.

a.   Defendant THE BOARD OF TRUSTEES OF THE VILLAGE OF NEW HEMPSTEAD (hereinafter referred to as the "Village") is a Municipal Corporation organized under the laws of the State of New York having jurisdiction over all matters within the Village of New Hempstead, including the adoption of a zoning code.

b.   Defendant LAWRENCE DESSAU ("DESSAU") is the Mayor of the Village of New Hempstead. Upon information and belief, DESSAU resides in the Village of New Hempstead.

c.      Defendant   WILLIAM   MORIARITY ("MORIARITY") is the Deputy Building Inspector for the Village of New Hempstead.   Upon information and belief MORIARITY

resides in the Town of Ramapo.

## CO-CONSPIRATORS

12. Various other persons not named as Defendants herein participated as co-conspirators with the Defendants in the violations set forth below, and performed overt acts in furtherance of the scheme to enact and selectively enforce the Village Zoning Code and other Code Provisions and deprive the Plaintiff ultra-Orthodox Jews of their ability to provide housing and reside in the Village for an exclusionary purpose.

## FACTUAL BACKGROUND

13. The BOARD OF TRUSTEES of the VILLAGE OF NEW HEMPSTEAD ("BOARD") is a municipal corporation existing pursuant to the laws of the State of New York. The Village of New Hempstead is in the Town of Ramapo, located in the County of Rockland. The County of Rockland is located within the Southern District of New York.

14. The Town of Ramapo's Orthodox Jewish population including ultra-Orthodox Jews has grown substantially and now represents approximately 25% of the population of the unincorporated Town of Ramapo.

15. The Village of New Hempstead adopted a Zoning Code in 1984 pursuant to New York Village Law which was enacted as Local Law No. 11 of 1984. When the Village of New Hempstead was incorporated, the premises were under the jurisdiction of the United States.

16.   In or about 1956 the United States of America ("United States") acquired possession and/or title to the premises by condemnation.

17.   Upon information and belief, in or about 1958 the United States constructed twelve (12) one-story residential dwelling units on the premises which consist of approximately 4.88 acres.

18.   The twelve one-story residential dwelling units on the premises were established prior to enactment of the Village Zoning Code.

19.   Upon information and belief, the said residential dwelling units were constructed and were occupied prior to formation of the Village of New Hempstead and during the time the Town of Ramapo had jurisdiction over the area now known as the Village of New Hempstead.

20.   Upon information and belief, the said twelve residential dwelling units will constitute non-conforming structures under the Town of Ramapo and Village of New Hempstead Zoning Codes at the time the Plaintiff YESHIVA takes title to the premises.

21.   Upon information and belief, the twelve residential dwelling units were occupied by employees of the United States for the purposes of residential dwelling units.

### VILLAGE OF NEW HEMPSTEAD FORMATION:

22.   Within the Town of Ramapo in the County of Rockland, a "Village Movement" began in the late 1970's.

Increasingly, ultra-Orthodox Jewish families began to reside in the Town of Ramapo with the Town of Ramapo utilizing its zoning and planning codes and laws as to accommodate Orthodox Jews in their effort to reside and worship within the Town.    Orthodox Jews are required to reside near places of worship since ultra-Orthodox Jews must walk on the Sabbath to places of worship.

23.    In opposition to the influx of ultra-Orthodox Jewish residents within the Town of Ramapo, the aforesaid Village incorporation movement was undertaken to establish villages for the purpose of controlling who resides within the Village by use of zoning and planning codes.

24.    Completely within the Town of Ramapo, the Villages of Montebello, Chestnut Ridge and New Hempstead were formed in the past decade.    The purpose of the village formation movement was to exercise control over zoning and planning and not accommodate the housing needs or religious practices of ultra-Orthodox Jews.

25.    Upon information and belief, in 1984 the Village of New Hempstead was formed as part of this same village movement process and pursuant to the goals of the other aforesaid village movements.

26.    In 1984 the Village adopted a zoning plan which provided for traditional single-family housing and did not provide adequate provisions for multiple family housing or undertake zoning laws to accommodate the needs of ultra-Orthodox Jewish residents to reside where they worship.    The

Village of New Hempstead divided all property within the Village into either one or two family residences only and one commercial district, a laboratory office zone.

### WITHDRAWAL OF MILITARY PRESENCE:

27.    Upon information and belief, the premises since occupation by the United States were utilized for military purposes involving the Nike Defense System.  That military use was intended to establish surface-to-air missiles for national defense purposes.

28.    Beginning in the early 1990's there was no need for the Nike Defense System.  Accordingly, there was no need for the residential housing of military families at the premises.

29.    Pursuant to the Steward B. McKinney Homeless Assistance Act, as amended at 42 U.S.C. 11411 and the Base Closure and Realignment Act enacted at Public Law 100-526, the premises were leased by the United States to a non-profit entity for purposes of providing residential housing for homeless individuals.

30.    Upon information and belief, in September of 1991 a lease was executed between the United States and the Rockland Community Action Council [ROCAC] for such residential purposes.

31.    When ROCAC undertook to place residents at the premises who were homeless, the Village, it's officers and agents did initiate litigation to prevent homeless persons from

occupying the premises.

32.     Eventually, the Village was successful in preventing homeless individuals from residing on the premises.

## PLAINTIFFS' INVOLVEMENT WITH THE PREMISES:

33.     On or about August 8, 1996 the Plaintiff YESHIVA in response to a public bidding process submitted a bid to purchase the premises from the United States. At that time it was disclosed publicly in a local newspaper that the premises were to be utilized for religious purposes involving ultra-Orthodox Jews.

34.     In response to that disclosure concerning the Plaintiff YESHIVA's proposed religious use of the premises, the Defendant VILLAGE indicated in writing to the Plaintiff YESHIVA on August 22, 1996 that use of the premises for student and faculty housing for a YESHIVA was not in compliance with the Village's Zoning Code.

35.     Upon information and belief, the Village has never communicated in writing to a potential purchaser of property that because of a published newspaper article the potential purchaser should be advised a proposed use was not in compliance with the Zoning Code for the Village.

## THE PLAINTIFF YESHIVA'S CONTRACT TO PURCHASE THE PROPERTY:

36.     On or about March 14, 1997 the Plaintiff YESHIVA was provided with a proposed deed to the premises for execution by the Plaintiff YESHIVA. At or about the aforesaid time, the Plaintiff YESHIVA through its only appointed officer

did execute a proposed deed and returned that deed to the United States for their execution and subsequent delivery.

37.    Subsequent to the execution of the deed by the Plaintiff YESHIVA, but prior to delivery of the deed to the premises by the United States, the Plaintiff YESHIVA was requested to tender the balance of the purchase price as a good faith demonstration to conclude the transaction.

38.    On or about May 15, 1997 the Plaintiff YESHIVA tendered a check in full payment of the balance of the purchase price to the United States. At that time, it was agreed by the then attorney for the Plaintiff YESHIVA and the attorney for the United States that the closing would take place at a future date when all documentation could be completed.

39.    Upon information and belief, contrary to the agreement regarding scheduling of a closing, an employee of the United States, MARIA ANGLADA, at the urging of the Defendants did provide to an individual hired for the limited purpose of providing a check to the United States the actual Deed to the premises.

40.    After delivery of the check for the Plaintiff YESHIVA, the Plaintiff YESHIVA has not received any delivery of a Deed to the premises.

41.    Prior to any delivery or tender of any delivery of the deed to the premises on or about May 9, 1997 the Defendant MAYOR did visit the premises where the Village had no jurisdiction to determine if the Plaintiff YESHIVA and others

were actually occupying the premises.

42.    On or about May 9, 1997 prior to any delivery or tender of any delivery of the deed to the premises the Defendant MORIARITY did visit the premises where the Village had no jurisdiction and did issue a Stop Work Order to an entity known as "YESHIVA CHOFETZ CHAIM".

43.    Thereafter, the Defendant VILLAGE on or about May 15, 1997 did prepare a Summons and Complaint against the entity known as "YESHIVA CHOFETZ CHAIM" for the purposes of obtaining a preliminary injunction and temporary restraining order regarding activities of the Plaintiff YESHIVA at the premises to undertake residence.

44.    On or about May 19, 1997 the Defendant VILLAGE obtained an Order to Show Cause signed by New York State Supreme Court HON. GEORGE M. BERGERMAN.    The Order to Show Cause was signed by said Judge with a temporary restraining order prohibiting any use, operation or occupation of the premises.

45.    On or about May 20, 1997 the Defendant VILLAGE consented to the temporary restraining order being vacated as there was no evidence of the Village having any jurisdiction over the premises and therefore, the New York State Supreme Court had no jurisdiction to issue any order regarding activities over the premises.

46.    Thereafter, upon information and belief the Defendant VILLAGE and Defendant MAYOR made contact with the

MARIA ANGLADA for purposes of having the United States restrict the use and occupancy by the Plaintiff at the premises herein.

47.   On May 27, 1997 the MARIA ANGLADA did appear at the premises and direct all persons working at the premises to provide residential housing for the Plaintiffs to vacate the premises forthwith.

48.   Upon information and belief, actions of MARIA ANGLADA were undertaken at the request and urging of the Defendant VILLAGE and Defendant MAYOR herein to stop the Plaintiffs from occupying the premises.

49.   Notwithstanding the purported authority of MARIA ANGLADA to direct the Plaintiffs and all persons working to provide housing for the Plaintiffs from the premises, thereafter on May 27, 1997 the United States through the Chief of its Real Estate Division for the United States Army Corps of Engineers for the New York District did indicate that the Defendant ANGLADA had no authority to undertake any such removal of the Plaintiffs or persons who were assisting the Plaintiffs from the premises.

**VILLAGE ZONING CODE:**

50.   The Village Zoning Code establishes pursuant to Article 3.1 only six different classifications of property use within the VILLAGE.  One-family residences are allowed in four zoning classifications: 1R-50; 1R-40; 1R-35; and 1R-25.

51.   A two-family residence is allowed only district 2R-15.  The other zoning category provides for a laboratory

office zoning district.

52.    The Village Code makes no provision for more than a two-family residence on any existing lot for an as-of-right residential use and the Village Code makes no provision for the accommodation of ultra-Orthodox Jewish residents to enable such residents to worship and undertake residency in the Village by having places of worship nearby where Orthodox Jews reside.

53.    The effect of the Village Code is to limit or otherwise prevent ultra-Orthodox Jews from residing in the Village.

54.    Beginning in or about August of 1996 and continuing to the present, the Defendant MAYOR did admit to the Plaintiffs that the Defendant VILLAGE was formed to prevent ultra-Orthodox Jews from residing within the VILLAGE and did not desire to encourage Orthodox Jews to reside in the Village and that efforts would be undertaken by the Defendants to prevent or otherwise prohibit the Plaintiffs and other Orthodox Jews from residing within the Village.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**

55.    Plaintiffs repeat and reallege paragraphs "1" through "54" as if fully set forth herein.

56.    Defendants have selectively, discriminatorily and improperly applied the laws and codes of the Village, in violation of Plaintiffs' right to equal protection of he laws as secured by the Fourteenth Amendment to the United States

Constitution. Upon information and belief, Defendants' actions were done in order to prevent Plaintiffs free exercise of its rights secured by the Fourth and Fourteenth Amendment to the United States Constitution.

57. Upon information and belief, Defendants unlawful aim is to force Plaintiffs to be unable to reside in the Village, without due process of law, causing irreparable harm.

58. Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

59. Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. Plaintiffs will continue to suffer such damages unless the Plaintiffs' acts and conduct complained of are permanently enjoined.

### SECOND CLAIM FOR RELIEF

60. Plaintiffs repeat and reallege paragraphs "1" through "60" as if fully set forth herein.

61. As a direct and proximate result of the above-referenced violations of Plaintiffs' Fourteenth Amendment rights by Defendants, Plaintiffs have suffered and continue to suffer substantial losses. The amount of such losses shall be determined at trial, but in no event less than $45,000,000.

### THIRD CLAIM FOR RELIEF

62. Plaintiffs repeat and reallege paragraphs "1" through "61" as if fully set forth herein.

63.    The Defendants, by their acts, have conspired and continue to conspire, in breach of 42 U.S.C. §§ 1983 and 1985 (3), to abridge the rights of Plaintiffs to Equal Protection to protect their property interests under the law in violation of the Fourteenth Amendment to the Constitution of the United States, Article I, §§ 1 and 11 of the New York State Constitution, and §§ 40-C(1) and (2) of the New York Civil Rights Law.

## FOURTH CLAIM FOR RELIEF

64.    Plaintiffs repeat and reallege paragraphs "1" through "63" as if fully set forth herein.

65.    The Defendants, by their acts, have conspired and continue to conspire, in breach of 42 U.S.C. §§ 1983 and 1985 (3), to abridge the rights of Plaintiffs to be free from discriminatory enforcement of its zoning code under the Fourteenth Amendment to the Constitution of the United States, Article I, §§ 1 and 11 of the New York State Constitution, and §§ 40-C(1) and (2) of the New York Civil Rights Law.

## FIFTH CLAIM FOR RELIEF

66.    Plaintiffs repeat and reallege paragraphs "1" through "65" as if fully set forth herein.

67.    The Defendants, by their acts, have conspired and continue to conspire, in breach of 42 U.S.C. §§ 1983 and 1985 (3), to violate and violated the property and housing rights of Plaintiffs in violation of the Fourteenth Amendment to the Constitution of the United States, 42 U.S.C. §§ 1981,

1982 and 1983, The Fair Housing Act, 42 U.S.C. §§ 3604 and 3612, Article I, §§ 1 and 11 of the New York State Constitution, and §§ 40-C(1) and (2) of the New York Civil Rights Law and §291(2) of the Executive Law of the State of New York.

### SIXTH CLAIM FOR RELIEF

68.    Plaintiffs repeat and reallege paragraphs "1" through "67" as if fully set forth herein.

69.    The Defendants, by their acts, have conspired and continue to conspire, in breach of 42 U.S.C. §§ 1983 and 1985 (3), to abridge and have abridged the Plaintiffs' rights to free exercise of religion and freedom of association in violation of the First and Fourteenth Amendment to the Constitution of the United States, Article I, §§ 3, 8 and 9 of the New York State Constitution.

### SEVENTH CLAIM FOR RELIEF

70.    Plaintiffs repeat and reallege paragraphs "1" through "69" as if fully set forth herein.

71.    The Village Zoning Code ignores the regional housing needs and has had an unjustifiably exclusionary effect and does not by its implementation provide to the Plaintiffs their right to have adequate housing which action violates Plaintiffs' rights as secured the Constitution of the State of New York.

72. Defendant Village Zoning Code does not provide "a properly balanced and well-ordered plan for the community" and

does not consider regional needs and requirements.

73. Plaintiffs have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

74. Defendants have caused Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury.

75. Plaintiffs will continue to suffer such damages unless the Village Zoning Code is declared unconstitutional and that this Court direct Defendant Village to provide a comprehensive zoning plan to meet the regional needs and requirements of the community and to provide multiple residential development that will provide affordable housing to Plaintiffs and other residents of the region.

### EIGHTH CLAIM FOR RELIEF

76. Plaintiffs repeat and reallege paragraphs "1" through "75" as if fully set forth herein.

77. The Village Zoning Code at Article 4.3 provides for non-conforming uses that were uses in effect when the Village Zoning Code was enacted.

78. In 1984 the Village Zoning Code was enacted. At that time the use of the premises was twelve one family residential dwelling units.

79. The premises were exempt from the Village Zoning Code as long as the Federal Government held title to the property.

80. Title to the premises as a matter of record is

with the United States up to the date of June 2, 1997.

81.    Under the Village Code any cessation of use after six months may serve as a basis to deny recognition as a non-conforming use.

82.    Under the Village Code, no six month period of time can begin to run until any property is subject to the jurisdiction of the Village Code.

83.    Since the premises have not been under the jurisdiction of the VILLAGE for over six months, the VILLAGE cannot declare any non-conforming use to be abandoned.

84.    Alternatively, the premises herein after title passes to the Plaintiff YESHIVA will be considered as part of the Town of Ramapo and not the Village of New Hempstead.

85.    Therefore, any zoning issues shall be as interpreted by the Town of Ramapo, not the Village of New Hempstead.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs demand Judgment as follows:

1. As to the First Claim for relief:

a. For a declaratory judgment holding the actions of all Defendants to be unconstitutional;

b. For permanent injunctive relief enjoining all Defendants from selectively and discriminatorily enforcing the laws and codes of the Village;

c. An award of attorneys fees and costs.

2. As to the Second Claim for Relief:

a. Compensatory damages against Defendant Village in an amount to be determined at trial, but in no event less than $45,000,000 consisting of compensatory as well as punitive damages to be assessed against any individual Defendants;

b. An award of attorneys' fees and costs;

3. As to the Third through Sixth Claims for Relief:

a. Declaring that the Defendants have conspired in violation of 42 U.S.C. §§ 1985(3) to deprive Plaintiffs of their rights pursuant to 42 U.S.C.§§ 1981, 1982, 1983; the First, Fourth and Fourteenth Amendments of the Constitution of the United States; The Fair Housing Act, 42 U.S.C. §§ 3604 and 3612, Article I, §§ 1 and 11 of the New York State Constitution, and §§ 40-C(1) and (2) of the New York Civil Rights Law and §291(2) of the Executive Law of the State of New York and the laws of the State of New York.

b. Declaring that the failure of the Defendants to provide Plaintiffs with Equal Protection of law was in furtherance of the conspiracy to deprive Plaintiffs of their constitutional and civil rights, and declaring that such failure constitutes an illegal official act;

c. Enjoining the Defendants and all others acting in concert with them from undertaking any and all action in furtherance of the selective enforcement and unlawful search and seizure and any other individual or official act in

furtherance of these discriminatory, selective and disparate acts;

d.    Awarding Plaintiffs their costs, disbursements and reasonable attorneys' fees incurred in the prosecution of this action, pursuant to 42 U.S.C.§§ 1988;

e.    For an award of attorneys fees, costs and disbursements;

(1) As to the Seventh and Eight Claims for relief:

(a) For a declaratory judgment holding the Village Zoning Code to be unconstitutional;

(b) Vacating and annulling the Village Zoning Code for its failure to provide for adequate housing to meet the regional needs and the needs of Plaintiffs;

(c)    That this Court direct Defendant Village to provide a comprehensive zoning plan to meet the regional needs and requirements of the community and further directing the Village to provide multiple residential development and townhouse development in their zoning code that will provide affordable housing to Plaintiffs and other residents of the region;

(d) For a declaratory judgment that any non-conforming use at the premises may continue;

(e) The Plaintiffs demand a trial by jury of all issues.

(f) Granting such other, further and different relief as to this Court seems just, proper and equitable.

Dated:     June 2, 1997
              Nyack, New York

Yours, etc.,

_____
DENNIS E. A. LYNCH, ESQ.- DL6537

DORFMAN LYNCH & KNOEBEL, ESQS.
Attorney for Plaintiffs
51 North Broadway
Nyack, New York 10960

**Exhibit C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
YESHIVA CHOFETZ CHAIM RADIN,
INC., et al.,

                     Plaintiffs,

    -against-

THE VILLAGE OF NEW HEMPSTEAD
BY ITS BOARD OF TRUSTEES OF THE
VILLAGE OF NEW HEMPSTEAD,
LAWRENCE DESSAU, Individually and
as Mayor, WILLIAM MORIARTY, in-
dividually and as Deputy Building
Inspector,

                     Defendants.
--------------------------------------------------------------X

STIPULATION + ORDER

97 Civ. 4021(CM)(LMS)

DEC 15 2000

It is hereby stipulated by and between the parties to this action through their respective

counsel as follows:

WHEREAS, the Plaintiffs, YESHIVA CHOFETZ CHAIM RADIN, INC., ISRAEL

GRUENER and BEREL SHAKOVIN, having commenced an action against the Defendants, THE

VILLAGE OF NEW HEMPSTEAD BY ITS BOARD OF TRUSTEES, LAWRENCE DESSAU,

Individually and as Mayor, WILLIAM MORIARTY, individually and as Deputy Building Inspector

(the "Defendants"), by filing a Summons and Complaint on June 3, 1997 in the United States District

Court for the Southern District of New York; and

WHEREAS, the Defendants served their Answer to the Complaint on July 18, 1997.

WHEREAS, the Complaint filed by the Plaintiffs concerns real property located at Town of

Ramapo Tax Map designation Section 9, Lot 71B, and situated in the Village of New Hempstead,

County of Rockland, State of New York (the "premises"); and

WHEREAS, prior to the incorporation of the Defendant Village, the premises were part of

the Town of Ramapo, County of Rockland, State of New York ("Town of Ramapo"); and

WHEREAS, prior to incorporation of the Defendant Village, in or about 1956 the premises

1

were owned and occupied by an agency of the United States of America (the "Federal Government") for military purposes consisting of a Nike Missile Defense Operation; and

WHEREAS, the Federal Government owned and occupied the premises at the time the Defendant Village of New Hempstead, New York (the "Village") was incorporated in 1984; and

WHEREAS, prior to the Federal Governmental acquiring the premises the premises were subject to the jurisdiction of the Town of Ramapo; and

WHEREAS, on or about May 30, 1997 the premises were sold by the Federal Government to the Plaintiff Yeshiva ("Plaintiff") at which time the Federal Government no longer owned or operated the premises; and

WHEREAS, the Village has and continues to assert that the use and occupancy of the premises by the Plaintiff is contrary to Village Zoning Law and the Plaintiff has and continues to disagree with that assertion; and

WHEREAS, the Defendant Village relinquishes now and forever any claim or assertion that its laws, rules and regulations, including but not limited to, its zoning laws and planning laws, apply to the premises and recognizes the laws, rules and regulations of the Town of Ramapo, including but not limited to, its zoning and planning laws to apply to the premises; and

WHEREAS, Plaintiffs acknowledges that the Town of Ramapo has a history of treating all religious groups and individuals justly and fairly and consents to this Stipulation and its terms and conditions pursuant to the direction of this Court and determination that the present use and operation consisting of educational, residential and religious uses are grandfathered under the Zoning Laws of the Town of Ramapo, but asserts that any future expansion of the use and operation is subject to the rules and regulations of the Town of Ramapo; however, this paragraph shall not be construed to prohibit the Town from conducting inspections to determine compliance with New York State Fire and New York State Building Codes. The specific uses of the aforementioned are as follows: Kiryas Radin Drive unit "1" through "11" are one-family residential, Kiryas Radin Drive Unit 12 is used for educational religious uses; and

2

WHEREAS, the parties having mutually agreed to resolve their differences through this Stipulation of Settlement.

NOW THEREFORE, upon the mutual conditions and consideration set forth herein it is agreed by and between the parties as follows:

1. Effective upon the so-ordering of this Stipulation and filing with the Clerk of the Court for the United States District Court for the Southern District of New York the parties agree that the premises described above and formerly known as the Nike Army Base property shall be subject to the jurisdiction of the laws, rules and regulations of the Town of Ramapo including but not limited to all zoning and planning laws, rules and regulations and not any laws, rules or regulations of the Defendant Village of New Hempstead, New York or its Boards, officers, officials or inspectors whereupon the Village will cease to provide any governmental or municipal services to the premises as well as the collection of any and all Village taxes, assessments, fees or other monies no matter how denominated by the Village.

2. In the event of any suit, claim, litigation or other act or actions undertaken to amend, modify, nullify or otherwise challenge this Stipulation and/or any interpretation or application of its terms or contents or agreements reached herein, and/or subject the premises to the jurisdiction of the Village of New Hempstead, the Plaintiff recognizes that it shall be its sole obligation to undertake such efforts as may be reasonable to uphold this Stipulation. Defendant agrees to undertake such efforts as may be reasonable to uphold this Stipulation also in that event.

3. In the event the Defendant Village or any of its officers, officials or employees becomes a party to any litigation referenced in paragraphs "2", then and in that event the Village shall forthwith cause any such action to be removed for purposes of adjudication to the United States District Court for the Southern District of New York. In the event of any such claim or litigation, the Defendant Village agrees to give to Plaintiff written notice of such claim or litigation and the Defendant Village consents to Plaintiff intervening as a party in any such claim or litigation. It is understood that the United States District Court for the Southern District of New York will retain

3

jurisdiction over any enforcement and/or interpretation of any of the terms and conditions of the Stipulation as well as its application.

4. In the event of any such claim or litigation as set forth in paragraph "2", the Defendant Village, its officers, officials and employees understand that the Plaintiff will assert that the premises are "grandfathered" for zoning purposes and that all uses, operations and structures at the premises are legal. The Defendant Village agrees not to take any position inconsistent with the foregoing assertion unless a Court of competent jurisdiction over this Stipulation determines this Stipulation to be invalid.

5. The parties hereto have agreed in a separate letter memorandum regarding the terms and conditions of any financial settlement, including but not limited to the payment of any damages and attorney's fees incurred, which letter agreement is not being filed herewith this Stipulation so the terms and conditions are confidential to the parties. All parties to this litigation agree that the terms and conditions of said letter memorandum shall remain confidential and should not be disclosed by any party unless required to do so by Court Order or other lawful authority. Nothing in any financial settlement shall be construed or deemed an admission of any liability or agreement with any of the allegations asserted in the Complaint or any of the Defenses raised in the Answer.

6. This Stipulation shall be binding upon and shall be for the benefit of the parties, their heirs, successors, legal representatives and assigns of each of the parties hereto, to the fullest extent permitted by law.

7. This Stipulation shall be full, final and with prejudice and without costs, disbursements or interest to any party. Plaintiffs shall issue and deliver to Defendants a General Release executed by a suitable and authorized officer upon execution and return of this Stipulation.

8. This Stipulation shall be governed by the laws of the State of New York.

9. This Stipulation constitutes the entire Stipulation between the parties, and nothing more nor less than the contents of this Stipulation is intended by the parties. Nothing in this Stipulation may be changed unless by a signed Stipulation signed by all parties.

10.   Neither this Stipulation nor any provisions thereof shall be amended or modified or deemed amended or modified, except by a Stipulation in writing duly subscribed and acknowledged with the same formality as this Stipulation.  Any waiver by either party of any provision of this Stipulation, or any right or option hereunder, shall not be deemed a continuing waiver and shall not prevent or stop such party from thereafter enforcing such provision, right or option, and the failure of either party to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Stipulation by the other party, shall not be construed as a waiver or relinquishment for the future of any such term or provision, but the same shall continue in full force and effect.

11. This Stipulation shall be filed with the Secretary of State and the Rockland County Board of Elections; however, failure of the Secretary of State or the Board of Elections to accept filing shall not affect the validity of this Stipulation.

DATED:   December 14, 2000

DORFMAN, LYNCH & KNOEBEL

By: _____
Dennis E. A. Lynch (DL 6537)
Attorneys for Plaintiff
51 North Broadway
Nyack, New York 10960
(845) 353-3500

MARX & ACESTE, LLP

By: _____
Paul I. Marx (PM 1354)
Attorneys for Defendants
1 North Lexington Avenue
White Plains, New York 10601
(914) 949-4760

SO-ORDERED:   /s/ _____
Magistrate Judge Lisa Margaret Smith

5

**Exhibit D**



## *Village of New Hempstead*

*108 Old Schoolhouse Road*
*New City, New York 10956*
*(845) 354-8100*
*Fax (845) 354-7121*

*Mayor*
*Lawrence Dessau*

*Deputy Mayor*
*Michael Koplen*

*Trustees*
*Robert Moskowitz*
*Itamar J. Yeger*
*Paul Mundt*

*Village Clerk-Treas.*
*Carole Vazquez*

*Village Attorney*
*Joel Grossbarth*

*Building Inspector*
*Patrick Massaro*

*Code Enforcement*
*Stephen Janta*

December 3, 2004

Town of Ramapo
Planning Board
237 Route 59
Suffern, New York 10901

Re:    GML Review for Kiryas Radin Housing (R-2048B)

Dear Members of the Planning Board:

The Village of New Hempstead hereby submits its comments on the site plan referenced above, and disapproves of the plan.

The Village of New Hempstead adopts and incorporates the County of Rockland, Department of Planning's statement and reasons for disapproval and additionally offers the following comments:

1.    The Town should follow all necessary legal and procedural requirements on this applicant and should ensure public commentary is  considered in all decisions;

2.    The Village has concerns regarding the increased traffic that will result on Grandview Avenue and Union Road as well as the health and safety concerns of Village residents based upon the increase that will result on this project;

3.    It is our understanding that the buildings in question have, or may contain asbestos. The Town should ensure that if asbestos is present in any of the buildings, removal be performed pursuant to industry standards and by a licensed asbestos removal company. These concerns raise serious health, maintenance and welfare of the surrounding area and surrounding landowners; and

Town of Ramapo
Planning Board
December 3, 2004
Page -2-

      4.     It is our understanding that the Planning Board has recently issued a negative declaration statement on November 30, 2004, pursuant to a S.E.Q.R.A. analysis. The Village of New Hempstead was not notified of the proposed S.E.Q.R.A. declaration and would ask the Board to adhere to the legal notifications requirements when the Board considers these legal aspects. We will reserve our rights regarding the S.E.Q.R.A. findings upon future notification which may include a request for reconsideration.

      We thank you for the opportunity to submit these comments. Please feel free to contact me if you have any questions or wish to discuss this matter further.

               Very truly yours,

               Joel A. Grossbarth,
               Village Attorney

JAG/df
cc: Rockland County Planning Department
    Village of New Hempstead Planning Board