UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————

MOSDOS CHOFETZ CHAIM INC., et al.,

                          Plaintiffs,

           -against-

THE VILLAGE OF WESLEY HILLS, et al.,

                      Defendants.

—————————————————————————

08-CV-0156 (KMK)

**ECF CASE**

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Table of Contents

**Page**

I.    PRELIMINARY STATEMENT  ..........................................................1

II.   STATEMENT OF FACTS.............................................................2

III.  ARGUMENT  ..........................................................................4

STANDARD OF REVIEW..................................................................4

POINT ONE
PLAINTIFFS HAVE STATED CLAIMS UNDER
§1982, §1983 AND THE FEDERAL AND STATE
CONSTITUTIONS AND CIVIL RIGHTS LAWS .........................................4

POINT TWO
PLAINTIFFS HAVE STANDING TO MAINTAIN
THEIR CLAIMS ..........................................................................11

POINT THREE
DEFENDANTS' CONDUCT IS NOT PROTECTED
BY THE NOERR-PENNINGTON DOCTRINE............................................13

POINT FOUR
THE COMPLAINT IS NOT BARRED BY
THE STATUTE OF LIMITATIONS ......................................................20

POINT FIVE
RULE 13(a) DOES NOT REQUIRE DISMISSAL  ........................................20

POINT SIX
THE CLAIMS AGAINST NEW HEMPSTEAD WERE
NOT PREVIOUSLY ADJUDICATED IN ITS FAVOR ...................................22

IV.   CONCLUSION.........................................................................23

## Table of Authorities

## CASES

*ACORN v. County of Nassau*, 2006 WL 2053732 (E.D.N.Y. 2006) .......................................... 12

*Akpan v. Koch*, 75 N.Y.2d 561, 570, 555 N.Y.S.2d 16, 554 N.E.2d 53 (1990) .......................... 17

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)............................... 4

*Beit Havurah v. Zoning Bd of Appeals of Town of Norfolk*,
  177 Conn. 440, 418 A.2d 82, 87 (Conn. 1979) ..................................................................... 6

*Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct.
  1955, 1973 (2007) ..................................................................................................................... 4

*Bill Johnson's Restaurants, Inc., v. NLRB*, 461 U.S. 731 n.5 (1983) .......................................... 14

*Colorado River Water Construction Dist. v. United States*,
  424 U.S. 800 (1976) ............................................................................................................... 21

*Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365 (1991) .................................................... 19

*Connolly v. McCall*, 254 F.3d 36 (2d Cir. 2001) ....................................................................... 20

*Cupe v. Lantz*, 470 F.Supp. 2d 128 (D. Conn. 2007) .................................................................. 21

*Dittmer v. County of Suffolk*, 146 F.3d 113 (2d Cir. 1998) .......................................................... 21

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ............................................................................................................... 14

*Fair Housing in Huntington v. Town of Huntington*,
  316 F.3d 357 (2d Cir. 2003) ............................................................................................... 4, 12

*Hammerhead Enter., Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983) ........................................... 10

**Page**

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ........................................................................... 17

*House of Good Shepherd v. Dept. of Revenue*, 300 Or. 340
    710 P.2d 778 (Or. 1985)........................................................................................ 6

*Iqbal v Hasty*, 490 F.3d 143 (2d Cir. 2007) ...................................................................... 4

*Jackson v. Okaloosa County*, 21 F.3d 1531, 1536-39 (11th Cir. 1994) ....................................... 12

*King v. Saratoga County Board of Supervisors*, 89 N.Y.2d 341,
    675 N.E.2d 1185, 653 N.Y.S.2d 233 (1996) ........................................................... 17

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (1995)
    *cert. denied*, 116 S.Ct. 2546 (1996) ..................................................... 6, 7, 8, 9, 15

*LeBlanc-Sternberg v. Fletcher*, 781 F.Supp. 261 (S.D.N.Y. 1991) .................................. 8, 10, 14

*Lucas v. Planning Board* 7 F.Supp.2d 310 (S.D.N.Y. 1998) ..................................................... 17, 18

*Matter of City of Rye v Korff*, 249 A.D.2d 470, 671 N.Y.S. 2d *526* (1998),
    *lv denied* 92 N.Y.2d 808, 700 N.E.2d *1229*, 678 N.Y.S.2d 593 [1998] ......................... 16

*Matter of Jackson v New York State Urban Dev. Corp.*, 67 N.Y. 2d 400,
    494 N.E.2d 429, 503 N.Y.S. 2d 298 ([1986] ..................................................... 16

*Mclean-Katter v. Keegan*, 2006 WL 3050878 (EDNY 2006)........................................ 21

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)............................................ 20

*Okewedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003) .............................................................. 10

*Romer v. Evans*, 517 U.S.620 (1996) .................................................................................. 1

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ................................................................... 4

*Saint Francis College v. Al Khazraji*, 481 U.S. 613 (1987) .......................................... 10

*Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987) ............................................ 10

*Sofarelli v. Pinellas County*, 931 F.2d 718 (11th Cir. 1991) ......................................... 10

*Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) ..................................................................... 2

*Tizes v. Curcio*, 1995 WL 476675 (N.D. Ill. 1995)................................................... 10, 15

*United Mine Workers v. Pennington*, 381 U.S. 657 (1965) ........................................... 14

**Page**

*U.S. v. ITT Continental Banking Co.*, 420 U.S. 223 (1975) ..............................................................

*United States v. Scott*, 788 F.Supp. 1555 (D. Kan. 1992) ..............................................................10

*United States v. Wagner*, 940 F.Supp. 972 (N.D. Tex. 1996) ......................................................10

*United States v. Yonkers Board of Education*, 837 F.2d 1186
(2d Cir. 1987), *cert. denied*, 486 U.S. 1055 (1988) ...........................................................8

*Village of Arlington Heights v. Metropolitan Housing Development
Corp.*, 429 U.S. 252 (1977)...........................................................................8, 11, 12, 19

*Village of Chestnut Ridge, et al., v. Town of Ramapo, et al.*
45 A.D. 3d 74 (2007) ..........................................................................................3, 14

*Warth v. Seldin*, 422 U.S. 490, 501 (1975) ................................................................4, 11

*Weiss v. Willow Tree Civic Association*, 467 F.Supp. 803 (SDNY 1979) ...........................6, 9,10

*Weiss v. La Suisse*, 260 F.Supp. 2d 644 (SDNY 2003) .................................................10

*Westchester Day School v. Village of Mamaroneck*,
504 F.3d 338 (2d Cir. 2007) ............................................................................6

*Woodford v. Community Action Aging of Greene County*,
239 F.3d 517 (2d Cir. 2001) ...........................................................................21

*Yeshiva Chofetz Chaim Radin, Inc. v. Village of New Hempstead*,
98 F.Supp. 347 (SDNY 2000) ...........................................................8, 13, 14, 15

*Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855(2d Cir. 1988) .............................6

## STATUTES

U.S. Const. Art. VI, Cl. 2 (Supremacy Clause) ..............................................................

U.S. Const. Amend. I ...................................................................................................9

U.S. Const. Amend. XIV ..............................................................................................9

42 U.S.C. §1981 ...................................................................................................9, 10

42 U.S.C. §1982 .............................................................................6, 8, 9, 10, 12, 21

42 U.S.C. §1983 ...................................................................................6, 9, 12

**Page**

42 U.S.C. §§3604, 3615, 3617 (Fair Housing Act) ..........................................................6, 9, 18, 21

42 U.S.C. §2000cc (RLUIPA) ...............................................................................................17, 19

Fed. R. Civ. Pro. 12(b)(6) ............................................................................................................

Fed. R. Civ. Pro. 13(a) ...........................................................................................................20

Article 78 ...................................................................................................................................

New York's State Environmental Quality Review Act ("SEQRA") ................................16, 17, 22

18A Wright & Miller, *Fed. Prac. & Proc.* Juris. 2d § 4443 ........................................................22

## I.    **PRELIMINARY STATEMENT**

Plaintiffs by their attorneys, Joseph J. Haspel, Esq., and Arnold & Porter, submit this Memorandum in opposition to the Motion of Defendants to dismiss this case.

Hiding behind a false façade as protectors of the environment, Defendants have utilized municipal governmental authority to advance their campaign against the spread of Orthodox Jewry in the Town of Ramapo. "If the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Romer v. Evans*, 517 U.S.620, 634, 116 S.Ct. 1620, 134 L.Ed. 855 (1996).

Although Defendants' stated motive may appear benevolent, their actual intent is discriminatory and illegal.   The civil rights causes of action in this lawsuit require the Court to look past stated motive and to evaluate the actual intent of the Defendants in taking their action. In doing so, the Court must look to the historical background from which the controversy emanates, the sequence of events that led to the Defendants' actions, the presence of departures from normal procedures and the degree of the discriminatory effect of the Defendants' actions.

Here, we are presented with five villages bordering a community of Orthodox Jews banding together to stop the building of a religious institution of higher education which provides a relatively small number of housing units for its adult students.  The alliance, which is unusual in and of itself, is an outgrowth of history.   All of these Villages, except Pomona, were incorporated after 1980.  These Villages were incorporated to establish zoning controls free of the Town of Ramapo, and to use that zoning power to stem the growth of the rapidly increasing Orthodox Jewish communities in the Township.   The animus Defendants bear against the Orthodox Jewish communities dates back long before the particular violations of Plaintiffs' civil

rights which are the focus of this action. The discriminatory actions set forth in the Complaint are the continuation and extension of a pattern of behavior which has already been the subject of multiple legal proceedings.

## II.    STATEMENT OF FACTS

Mosdos Chofetz Chaim Inc. ("Mosdos") is a religious corporation which seeks to operate a center of advanced religious study, Kiryas Radin, with a community of scholars and students following the religious precepts of Orthodox Judaism as taught by Rabbi Israel Mayer Kagan. Complaint ¶¶ 8, 31-34. In December 2005, Mosdos acquired a five-acre site in the Town of Ramapo (formerly known as the 'Nike site') at which plans were already underway to develop a Kiryas Radin campus. Mosdos proceeded to complete construction of the campus, erecting a synagogue, prayer/study hall, classrooms, Talmudic research center, Mikvah and residential facilities consisting of apartments to be occupied by married students and their families. Complaint ¶¶ 40-43. The construction was completed in accordance with permits and approvals from the Town of Ramapo. See Complaint ¶ 68.

Defendants, Villages that have been established within the Township of Ramapo to block any large-scale influx of Orthodox Jews or of religious institutions that serve that community and individuals active in promoting those exclusionary and discriminatory goals, had previously blocked another organization, Yeshiva Chofitz Chaim, Inc., from establishing the Kiryas Radin center by obtaining a preliminary injunction in a state court lawsuit, *Village of Chestnut Ridge, et al., v. Town of Ramapo, et al.* ("*Chestnut Ridge*"). But by the time Mosdos acquired the property and proceeded to construct the center, the injunction had expired and an order had been entered dismissing the Villages from that suit for lack of standing.

- 2 -

In August 2007, after completion of almost all construction at the center but before Certificates of Occupancy were issued, the Appellate Division reversed the judgment of the lower court in *Chestnut Ridge* against the Villages, ruling that they had standing to pursue various claims against the Town of Ramapo and that one of them, the Village of Wesley Hills, had standing to challenge the site plan approval of the Kiryas Radin campus. *Chestnut Ridge*, 45 A.D. 3d 74 (2007). The Villages then acted against Mosdos. They added Mosdos as a defendant to the *Chestnut Ridge* action and sought and obtained preliminary injunctive relief barring Mosdos from occupying any of the Kiryas Radin center buildings.

Mosdos responded by filing this action.[1] It is joined by Plaintiffs Moshe Ambers and Rabbi James Bernstein, individuals who are ready to study and live at the Kiryas Radin campus, but were prevented from doing so. Complaint ¶¶ 12-13. Also joining are Rabbis Aryeh and Meyer Zaks, leaders of the yeshiva and of the organization, Yeshiva Chofetz Chaim, Inc., whose prior efforts to develop the center and campus had been relentlessly opposed and frustrated by the Defendants in a longstanding campaign of discrimination dating back to the 1990s. Complaint ¶¶ 9-11, 44-122.

---

[1]    To the extent plaintiffs argue lack of standing, statute of limitations or laches based on chronological facts outside the pleadings, those arguments are improper in a motion to dismiss. In any event, the chronological sequence set forth in the parties' briefs in *Chestnut Hill* on the motions pending in that case establishes that Mosdos filed suit promptly on its rights being violated:

- 12/2005    Mosdos acquires site, then develops Kiryas Radin
- 9/2007    Mosdos joined as a defendant in *Chestnut Ridge* suit and enjoined from continuing construction or occupying Kiryas Radin
- 10/2007    Mosdos removes *Chestnut Ridge* action to this court
- 1/2008    Mosdos *et al.* file this action

## ARGUMENT

## STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion to dismiss, a court must accept as true all of the factual allegations contained in the complaint, and draw all reasonable inferences from those allegations in the plaintiffs' favor. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). In a civil rights case alleging discrimination, a plaintiff need not allege facts constituting a *prima facie* case of discrimination, as the issue on a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail but whether he is entitled to offer evidence at trial to support his claims. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511-14 (2002). The notice pleading standard requires only that a complaint contain "enough facts to state a claim that is plausible on its face", *Bell Atlantic Corp. v Twombly*, 127 S.Ct. 1955, 1969 n. 8 (2007). No greater degree of specificity is required for complaints alleging discriminatory animus and officials' involvement in civil rights violations. *Iqbal v Hasty*, 490 F.3d 143, 157-8, 174-5 (2d Cir. 2007).

In a motion to dismiss for lack of standing, as well, the truth of the facts alleged in the Complaint is accepted, and reasonable inferences are drawn in plaintiff's favor. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Fair Housing in Huntington v. Town of Huntington*, 316 F.3d 357, 362 (2d Cir. 2003).

## POINT ONE

### PLAINTIFFS HAVE STATED CLAIMS UNDER §1982, §1983 AND THE FEDERAL AND STATE CONSTITUTIONS AND CIVIL RIGHTS LAWS

The Complaint alleges that Defendants, individually and in concert, acted to thwart the establishment of plaintiffs' religious center and yeshiva community because Defendants are determined to keep Orthodox Jews from living in their communities, and to prevent their

- 4 -

freedom to worship and engage in religious study in order to drive them away. Each of the Defendant Villages was incorporated in order to enact zoning regulations which would achieve those ends. Complaint ¶¶ 45-48, 79, 100, 107, 119, 122. Several of the Villages enacted local zoning laws and took other actions designed to make the establishment of yeshiva centers like Kiryas Radin within their borders impossible. See Complaint ¶¶ 80-93, 101-103. When the Town of Ramapo undertook initiatives to revise its land use controls in order to accommodate the legitimate needs of Orthodox Jewish residents and their religious institutions, the Villages and individual Defendants organized opposition to the initiatives. Their motivation was to keep Orthodox Jews from residing in Town neighborhoods adjacent to Village borders, or in the Villages proper, and to block the establishment of religious institutions that would encourage that residence.

The Complaint sets forth a sample of the actions taken to advance the discriminatory campaign. Some were not successful, but show the animus that motivated the Defendants. One strategy did meet with at least temporary success. Individual Defendants and their "civic associations" were able to enlist the legal and financial resources of the Village governments to file and press lawsuits blocking the establishment of Orthodox Jewish religious institutions. With specific reference to Kiryas Radin, Defendants used Village resources to hire outside counsel and fund litigation against the Town of Ramapo and Plaintiffs in state court. The purported environmental grounds for the suit were purely pretextual. Complaint ¶¶ 71-76. Its actual purpose, and effect, was to inhibit plaintiffs' exercise of religious freedoms and to block the influx of Orthodox Jewish students and their families. *Id.*

The Complaint's allegations establish that Defendants deprived Plaintiffs on prohibited discriminatory grounds of the right to rent and occupy the Kiryas Radin student residences, in

violation of 42 U.S.C. §1982. The same facts establish a violation of the Fair Housing Act, 42

U.S.C. §§3604 and 3617. Because Defendants conspired to use Village governmental authority

to deny the housing rights, their actions violated 42 U.S.C. §1983 as well. §1983 was further

violated by their use of Village authority to deprive Plaintiffs of First Amendment rights to

engage in religious study and religious communal life.[2]

Regrettably, this suit is only one in a long series of cases in this District relating to the

efforts of individuals and local municipal officials in the Ramapo area to deny equal rights to

members of the Orthodox Jewish Community.[3] Defendants rely heavily on an opinion in one of

the first, *Weiss v. Willow Tree Civic Associations* ("*Weiss*"), 467 F. Supp. 803 (SDNY 1979).

That opinion is discussed, *infra*. But Defendants ignore a number of more recent opinions that

are more directly on point.

The leading decision in this Circuit discussing the liability of local Governments acting

on pretextual grounds to deny Constitutional and civil rights because of discriminatory animus is

*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d. Cir. 1995) *cert. denied*, 116 S.Ct. 2546 (1996).

That case too involved action by one of the Ramapo Township Villages against an Orthodox

Jewish religious institution – in that case, a synagogue. Individuals opposed to the influx of

---

[2]    Free exercise rights protect not only worship services but facilities used for religious education and facilities used for the residence and communal activities of religious groups. *E.g.*, *Westchester Day School v. Village of Mamaroneck*, 504 F.3d 338, 345-48 (2d Cir. 2007) (schoolrooms where curriculum of studies "permeated with religious aspects"); *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 869-70, 871-72 (2d Cir. 1988) (open area surrounding seminary affording quietude contributing to "atmosphere of quiet reflection" conducive to spiritual preparation of seminarians); *Beit Havurah v. Zoning Bd of Appeals of Town of Norfolk*, 177 Conn. 440, 449-50, 418 A.2d 82, 87 (Conn. 1979) (sleeping accommodations necessary to religious community engaged in communal worship, study and celebration of religious festivals); *House of Good Shepherd v. Dept. of Revenue*, 300 Or. 340, 344, 710 P.2d 778, 779 (Or. 1985) ("religion may be advanced by communal living in an atmosphere of prayer and adherence to canon law").

[3]    Cases currently pending include *United States v. Village of Suffern*, 06-CV-7713 (SCR); *Bikur Cholim, Inc. et al. v. Village of Suffern*, 05-CV-10759 (SCR); and *Cong. Rabbinical College of Tartikov v. Village of Pomona, et al.*, 07-CV-6304 (KMK) (GAY).

Orthodox Jewish residents formed a "civic association" which pushed for Village control of zoning and for zoning provisions which would restrict the First Amendment rights of Orthodox Jews and discourage them from residing in the area. As part of the campaign, the civic association financed Article 78 proceedings in state court successfully challenging synagogue land use applications on technical grounds. *Id.* at 420. Members of the association won election to Village office, and enacted restrictive zoning measures aimed at excluding Orthodox Jewish residents and synagogues. Although the Defendants attempted to show that their zoning concerns were legitimate and nondiscriminatory, plaintiffs introduced evidence that those concerns were pretextual. *Id.* at 421.

The Second Circuit upheld a jury verdict finding that the Village had violated the civil rights of the synagogue and of Orthodox Jewish residents. Discussing the Fair Housing Act, the Court held that the evidence supported a finding of liability on a theory of intentional discrimination. Animus against a protected group 'was a significant factor' in the position taken by the municipal decision-makers. *Id.* at 425. Since their motive was discriminatory, "it is of no moment that the complained-of conduct would be permissible if taken for nondiscriminatory reasons." *Id.* at 425. Discriminatory intent could be inferred from the totality of circumstances, including the historical background of the municipal action and contemporary statements evidencing discriminatory animus made by members of the decision-making body.[4] *Id.;* see

---

[4]    The facts which the Second Circuit in *LeBlanc-Sternberg* found supportive of a finding of discriminatory animosity toward Orthodox Jews as a group are similar to those alleged here. The civic association leaders in *LeBlanc-Sternberg* wrote and spoke of the Town of Ramapo's tolerant policies toward home synagogues and multi-family housing as leading to the "grim picture of a Hasidic belt." They cited potential noise and traffic problems among their reasons for opposing synagogues but tolerated existing traffic and noise caused by secular uses. They opposed slight zoning variances for the construction of a synagogue but elected not to oppose one for a Catholic church. The civic association leaders made or adopted statements such as "I will not have a Hasidic community in my backyard" and

Footnote continued on next page

*United States v. Yonkers Board of Education*, 837 F.2d 1186, 1217-23 (2d Cir. 1987), *cert. denied*, 486 U.S. 1055 (1988); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267-68 (1977). The same principles would apply to claims of intentional discrimination to deprive housing rights under 42 U.S.C. §1982. In fact, the district court in *LeBlanc-Sternberg* had denied a motion to dismiss a §1982 claim alleging the same intentional discrimination. *LeBlanc-Sternberg v. Fletcher*, 781 F.Supp. 261, 267-8 (S.D.N.Y. 1991).

Discussing the Civil Rights Act of 1871, *LeBlanc-Sternberg* held that a §1983 violation could be established by proof that municipal officials violated rights under the free exercise clause of the First Amendment. *Id.*, 67 F.3d at 426. Liability under §1985(3) attaches when individuals conspire together to deprive such rights based on a "class-based, invidiously discriminatory animus" such as plaintiffs' religion. *Id.*, 67 F.3d at 427.

Another opinion closely on point, also ignored in Defendants' brief, is the decision denying another of the Township of Ramapo Village's motion for summary judgment in *Yeshiva Chofetz Chaim Radin, Inc. v. Village of New Hempstead*, 98 F.Supp. 347 (SDNY 2000). That case involved one of the Plaintiffs and one of the Defendants in the instant action and also concerned Village action to prevent yeshiva student housing at the Kiryas Radin site.[5] Plaintiffs alleged, *inter alia*, that the Village and Village officials attempted to get county and state officials to stop construction and filed an action in state court to enjoin the Yeshiva's activities at

---

Footnote continued from previous page

"the reason of forming this village is to keep people like you out of this neighborhood." *Id.* 67 F.3d at 431. Compare Complaint ¶¶ 56, 66, 109-115.

[5]    Defendants refer to that action, but not to the District Court opinion denying a motion to dismiss, in arguing that settlement of that action bars claims here as *res judicata*. Plaintiffs address that argument *infra* at pp. 22-23.

the site. *Id.*, 98 F.Supp. at 351. The complaint asserted causes of action under the First and Fourteenth Amendments, 42 U.S.C. §§1981, 1982 and 1983, the Fair Housing Act and other federal and state civil rights laws. Defendants' motion for summary judgment on all claims was denied in its entirety. *Id.*, 98 F.Supp. at 349. The court ruled that municipal action to selectively enforce or prosecute a law or ordinance in order to restrict religious practices stated a valid Constitutional claim. *Id.*, 98 F.Supp. at 352-4. Municipal action to deny housing rights motivated by discriminatory animus also stated a claim under the Fair Housing Act, regardless of whether "the complained-of conduct would be permissible if taken for discriminatory reasons." *Id.*, 98 F.Supp. 2d at 355, quoting *LeBlanc-Sternberg*, 67 F.3d at 425.

Defendants' heavy reliance on the decision in *Weiss v. Willow Tree Civic Association*, 467 F.Supp. 803 (SDNY 1979) is misplaced. *Weiss* too involved a group of individuals from the Ramapo area with anti-Orthodox animus similar to Defendants', banded together in a neighborhood association with aims similar to those of the "Airmont Civic Association" involved in *LeBlanc-Fletcher* and the "Preserve Ramapo" association involved here. But back in 1979, the *Weiss* defendants had not yet succeeded in seizing control of the Village governments and exercising state power to advance their discriminatory aims. The *Weiss* court dismissed §1983 and §1985 claims because the complaint alleged no state or municipal activity and named no local governments or government officials. *Id.*, 467 F.Supp. at 809-15. The instant Complaint does seek relief against the Villages and Village officials and asserts that the individual Defendants utilized municipal authority and finances to pursue pretextual litigation brought in the Villages' name, enact discriminatory zoning laws and otherwise use state power to harm Plaintiffs.

*Weiss* dismissed §1982 claims based on the court's interpretation of the allegations of animus against Orthodox Jewish residents as not being on "racial" grounds. However, the subsequent Supreme Court decisions in *Saint Francis College v. Al Khazraji*, 481 U.S. 613 (1987) and *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987) established that discrimination because of anti-Jewish animus does give rise to §1982 liability. Courts subsequently have regularly recognized §1981 and §1982 claims based on discrimination against Orthodox Jews. *E.g., LeBlanc-Sternberg v. Fletcher*, 781 F.Supp. 261, 267-8 (SDNY 1991); *Weiss v. La Suisse*, 260 F.Supp. 2d 644, 650 (SDNY 2003).[6]

The fact that the Villages utilized the state courts to block Defendants' religious center but had no <u>direct</u> authority to control land use at the site does not immunize their actions. Filing and prosecuting lawsuits may violate civil rights law when their purpose is to effectuate prohibited discrimination. *E.g., United States v. Wagner*, 940 F.Supp. 972 (N.D. Tex. 1996) (filing state lawsuit to block sale of home for use as group home for mentally retarded children violated Fair Housing Act); *United States v. Scott*, 788 F.Supp. 1555 (D. Kan. 1992) (similar holding); *Tizes v. Curcio*, 1995 WL 476675 (N.D. Ill. 1995) (filing lawsuit in state court seeking review of a zoning decision can give to §§1981, 1982 and Fair Housing Act claims if motivated by prohibited discriminatory animus); see *Sofarelli v. Pinellas County*, 931 F.2d 718, 725 (11th Cir. 1991) ("removal under §1443 is proper when a lawsuit filed in state court is itself the act by which the movant's civil rights are violated"). Municipal officials can be held liable for deprivation of Constitutional rights when they "exert an impermissible type or degree of pressure" even though they have no "direct regulatory or decision making authority." *Okwedy v.*

---

[6]   The alternative basis for dismissal in *Weiss* based on defendants' First Amendment rights of petition and association is discussed at pp. 14-18, *infra*.

- 10 -

*Molinari*, 333 F.3d 339, 343-44 (2d Cir. 2003); *Hammerhead Enter., Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983).

**POINT TWO**

**PLAINTIFFS HAVE STANDING TO MAINTAIN THEIR CLAIMS**

Defendants argue that plaintiffs lack standing because they have suffered no concrete, demonstrable injury as a result of the *Chestnut Ridge* lawsuit. But it is hard to imagine a case with clearer, more demonstrable harm. The Kiryas Radin project, with sixty residences for married students and a multitude of facilities for worship and religious study, was fully approved by Town of Ramapo officials. By filing the *Chestnut Ridge* suit and demanding an injunction to halt construction, Defendants temporarily brought the project to a complete halt in 2004. After the state Supreme Court ruled that they had no standing to pursue their claims and the injunction was lifted, the project went forward. Mosdos acquired the site and completed construction. The building and residences stand empty now only because Defendant Villages, after obtaining reversal of the lower court opinion, successfully renewed their demand for an injunction against occupancy. The result not only has been financially ruinous for the yeshiva but has prevented it from carrying out its religious objectives. Plaintiffs Ambers and Bernstein and dozens of other families who sought to live in the Kiryas Radin center have been excluded from the residences that were to be their homes.

Plaintiffs here meet all the tests for standing set forth in *Warth v Seldin*, 422 U.S. 490 (1975), the case on which defendants principally rely. Each has alleged "specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention." *Id.*, 422 U.S. at 508. Moreover, the facts here are much closer to those in the subsequent Supreme Court case, *Village of Arlington Heights v. Metropolitan Housing Develop. Corp.*, 429 U.S. 252, 261-64 (1977). As in *Village of Arlington*

- 11 -

*Heights*, the developer here is a nonprofit corporation interested in making suitable low-cost housing available in areas where it is scarce; there is a detailed, specific project (here it has already been built); individuals have joined as plaintiffs who "would qualify for the housing . . . [and] would probably move there." *Id.*, 437 U.S. at 563. As the court found in *Village of Arlington Heights*:

> "The injury [plaintiff] asserts is that his quest for housing . . . has been thwarted by official action that is racially discriminatory. If a court grants the relief he seeks, there is at least a "substantial probability," *Warth v. Seldin*, supra, 422 U.S., at 504, 95 S.Ct., at 2208, that the [planned] project will materialize, affording [plaintiff] the housing opportunity he desires. . . His is not a generalized grievance. Instead, as we suggested in *Warth*, supra, at 507, 508 n. 18, 95 S.Ct. at 2210, it focuses on a particular project and is not dependent on speculation about the possible actions of third parties not before the court."

*Id.*; *See Jackson v. Okaloosa County*, 21 F.3d 1531, 1536-39 (11th Cir. 1994) (minority group member who alleges she intends to move into proposed facility has standing under ¶¶ 1982 and 1983; because "a specific project would have a substantial probability of being constructed, the case is "easily distinguishable" from cases like *Warth* where no specific project was at issue); *Fair Housing in Huntington v. Town of Huntington*, 316 F.2d 357, 361-4 (2d Cir. 2003); *ACORN v. County of Nassau*, 2006 WL 2053732 (E.D.N.Y. 2006).

Defendants purport to be mystified by the assertion against them of claims relating to real estate that lies outside their legal borders. The anomaly, however, is that their claim of standing to interfere in projects outside their borders was partially accepted by the Appellate Division in *Chestnut Ridge*. After they have been allowed to pursue litigation against projects outside their borders, it cannot be claimed that their ability to have an impact, and to cause palpable harm giving rise to standing, stops at their borders.

## POINT THREE

## DEFENDANTS' CONDUCT IS NOT PROTECTED
## BY THE NOERR-PENNINGTON DOCTRINE

### Defendants Not Only Advocated State Action But Exercised It

Defendants argue that the claims against the individual Defendants are premised on their having "spoken out" against the Kiryas Radin project and having written articles and given speeches in an attempt "to influence legislative or executive action." That mischaracterizes plaintiffs' claims. The Complaint recites various statements and articles that demonstrate the clear and virulent animus against Orthodox Jewish influx into the area on the part of various individual Defendants. But what is complained of as unlawful is not the advocacy of state action but the exercise of it. The individual Defendants are Village officials who used their control of Village funds and their authority to file suit in the Villages' names to pursue their personal discriminatory agendas.

Arguments like those defendants assert here, including the argument that plaintiff's claims have the elements of a Strategic Lawsuit Against Public Participation ("SLAPP"), were rejected by the court in *Yeshiva Chofetz Chaim Radin, Inc. v. Village of New Hempstead, supra,* 98 F.Supp. 2d at 360-61:

> "Defendants . . . were at all times acting in their roles as representatives and officials of the government . . . Even the instigation of the state legal proceeding against Yeshiva was undertaken by defendants in their roles as representatives of the government, not as private citizens seeking to petition the government . . . Furthermore the lawsuit by Yeshiva does not purport to challenge the <u>speech</u> of the defendants; rather it challenges the <u>actions</u> they took under color of state law, including their efforts to stop construction work and to evict the parties from the premises . . . "

\*    \*    \*

- 13 -

> In sum, since the defendants' rights to free exercise of speech, petition and association were not implicated by Yeshiva's lawsuit, the SLAPP label does not seem to apply."

See also *LeBlanc-Sternberg v. Fletcher, supra*, 781 F.Supp. at 267 ("To allow individuals to avail themselves of first amendment protections when it is alleged that their conduct will lead to official misconduct in violation of the United States Constitution would violate the purposes of the civil rights laws.")

Defendants argue that the doctrine of *United Mine Workers v. Pennington*, 381 U.S. 657 (1965) and *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) protect those who petition administrative agencies and the courts by initiating legal proceedings. However, that doctrine has not been extended to immunize suits that have an objective that is illegal under federal civil rights laws. *See Bill Johnson's Restaurants, Inc., v. NLRB*, 461 U.S. 731, 737, n.5 (1983).[7]

*Weiss*, decided before *Bill Johnson's Restaurants*, found that *Noerr-Pennington* protected a campaign of political activity and advocacy that included the filing of a lawsuit. *Id.*, 467 F. Supp. at 817. However, the bulk of the conduct challenged there involved lobbying and advocacy to municipal officials. The lawsuit was a minor part of the overall campaign, and failed in its aim of preventing consideration by the Town Planning Board of the zoning applications at issue. *Id.*, 467 F. Supp. at 818. Here, on the other hand, the key strategy that Defendants have employed to achieve their ends has been to utilize the Villages' names and

---

[7]    The *Noerr-Pennington* doctrine also does not come into play when a party files a baseless state court suit. *Bill Johnson's Restaurants, supra*, 461 U.S. at 743-44. Here, both the Supreme Court and Appellate Division have ruled in *Chestnut Ridge* that the Villages of Chestnut Ridge, Pomona and Montebello had no standing to challenge the approval of the Kiryas Radin site plan. That claim was baseless. *See Village of Chestnut Ridge, supra*, 45 A.D. at 74, 79, 95-6 (ruling on thirteenth cause of action). The Village of Wesley Hills was found to have standing, but the allegations of the Complaint herein, if proven, would require dismissal of Wesley Hills' claim.

funds to press state court litigation against plaintiffs, blocking development of Kiryas Radin.

The lawsuit's objective were illegal under the Constitution, the Fair Housing Act, and the Civil

Rights Acts of 1866 and 1871.  As in *LeBlanc-Fletcher supra*, 67 F.3d at 420 (zoning application

"twice successfully challenged on technical grounds in Article 78 proceedings) and *Yeshiva*

*Chofetz Chaim Radin, Inc., supra*, 98 F. Supp. at 351 (filing of an action in state court, by the

Village, to enjoin the Yeshiva's activities on the site), the lawsuit here was state *action*, not

private speech, which illegally injured plaintiffs.  As the court held in *LeBlanc-Sternberg, supra*,

781 F. Supp. at 266-7:

> Discrimination through the exercise of government power is
> illegal, to state the obvious.  It is one thing to make use of a
> petition to achieve legitimate, though adverse, goals.  It is quite
> another to use a legitimate process for illegal purposes.  "Acts
> generally lawful may become unlawful when done to accomplish
> an unlawful end, and a constitutional power cannot be used by way
> of condition to attain an unconstitutional result."  *Gomillion v.*
> *Lightfood*, 364 U.S. 339, 345-46, 81 S.Ct. 125, 129, 5 L.Ed.2d 110
> (1960) (citations omitted).

> \*      \*      \*

> The "first amendment . . . may not be used as the means or the
> pretext for achieving 'substantial evils' which the legislature has
> the power to control."  *California Motor Transp.*, 404 U.S. at 515,
> 92 S.Ct. at 614.  To allow individuals to avail themselves of first
> amendment protections when it is alleged that their conduct will
> lead to official misconduct in violation of the United States
> Constitution would defeat the purpose of the civil rights laws.
> "It is inconceivable the guaranties embedded in the Constitution
> of the United States may thus be manipulated out of existence."
> *Gomillion*, 364 U.S. at 345, 81 S.Ct. at 129 (quoting *Frost & Frost*
> *Trucking Co. v. Railroad Commission of California*, 271 U.S. 583,
> 594, 46 S.Ct. 605, 607, 70 L.Ed. 1101)."

*See also Tizes v. Curcio, supra*, 1995 WL 476675 at \*4-\*6.

**Defendants Assert Technical Procedural Irregularities By Another**
**Party as a Weapon to Frustrate Plaintiffs' Protected Civil Rights**

In evaluating this case, the Court must not lose sight of the fact that Defendants' state court litigation is predicated upon New York's State Environmental Quality Review Act ("SEQRA"), which statute, by its very nature is principally procedural, not substantive. Indeed, SEQRA does not define any specific land use requirements. It merely provides that the "lead agency" (the Town of Ramapo with respect to the Mosdos property) take a "hard look" at the project and work to mitigate adverse environmental consequences. Specifically, SEQRA requires that the lead agency "act and choose alternatives which, consistent with social, economic and other essential considerations, to the maximum extent practicable, minimize or avoid adverse environmental effects." ECL 8-0109[1]. "Nothing in the law (SEQRA) requires an agency to reach a particular result on any issue, or permits the courts to second-guess the agency's choice, which can be annulled only if arbitrary, capricious or unsupported by substantial evidence'." (*Matter of City of Rye v Korff*, 249 A.D.2d 470, 471-472, 671 N.Y.S. 2d 526 (1998), *lv denied* 92 N.Y.2d 808, 700 N.E.2d 1229, 678 N.Y.S.2d 593 (1998), quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 N.Y. 2d 400, 416-417, 494 N.E.2d 429, 503 N.Y.S. 2d 298 (1986).

While literal compliance with SEQRA's procedural requirements is necessary, New York courts allow local agencies considerable latitude in the exercise of discretion for substantive environmental decisions. *King v. Saratoga County Board of* Supervisors, 89 N.Y.2d 341, 675 N.E.2d 1185, 653 N.Y.S.2d 233 (1996). As explained by New York's Court of Appeals:

> Judicial review of a lead agency's SEQRA determination is limited to whether the determination was made in accordance with lawful procedure and whether, substantively, the determination "was affected by an error of law or was arbitrary and capricious or an abuse of discretion." In assessing an agency's compliance with the substantive mandates of the statute, the

- 16 -

> courts must "review the record to determine whether the agency identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination." An agency's compliance with its substantive SEQRA obligations is governed by a rule of reason and the extent to which particular environmental factors are to be considered varies in accordance with the circumstances and nature of particular proposals.    Similarly, agencies have considerable latitude evaluating environmental effects and choosing between    alternative measures.  While judicial review must be meaningful, the courts may not substitute their judgment for that of the agency for it is not their role to "weigh the desirability of any action or [to] choose among alternatives."

*Akpan v. Koch*, 75 N.Y.2d 561, 570, 555 N.Y.S.2d 16, 554 N.E.2d 53 (1990).

Thus, most, if not all SEQRA cases are based in procedural infirmities.  With respect to the parties controversy in this case, the Defendants' lawsuit is based in allegations of procedural infirmities directed not at Mosdos, but at the Town of Ramapo.

Under the Supremacy Clause, the Fair Housing Act, the Civil Rights Statutes or RLUIPA, Defendants claim for technical violations of SEQRA's procedural requirements in this case is improper, since those technical requirements impede substantive federal law.  42 U.S.C. §2000cc (RLUIPA), (Fair Housing Act), U.S. Const. Art. VI, Cl. 2 (Supremacy Clause). *See also, Lucas v. Planning Board* 7 F.Supp.2d 310 (S.D.N.Y. 1998).    Federal law may supersede state law when compliance with both state and federal law is impossible or because state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 85 L.Ed. 581, 61 S.Ct. 399 (1941).

In the *Lucas* case, *supra,* which was decided under the Telecommunications Act, Judge Brieant emphasized that Congress had expressly provided for limitations on the power of local zoning officials to frustrate the federal interest in securing a national wireless communications infrastructure.  The federal statute "implement[ed] Congress' intent 'to stop local authorities from keeping wireless providers tied up in the hearing process' through invocation of state procedures, moratoria or gimmicks." *Lucas*, 7 F.Supp. 2d at 321-22.

- 17 -

Certainly, upholding the constitutional rights of Freedom of Religion, and the Freedom of Assembly, or insuring compliance with the Fair Housing Act, or permitting religious land use in a manner consistent with RLUIPA is beyond the importance of building a cell tower.  With respect to the rights at issue in this case, Congressional intent is as clear as that set forth in the Telecommunications Act. Indeed, 42 U.S.C. §2000cc (RLUIPA) provides:

> General Rule.  No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
>
> (A) is in furtherance of a compelling governmental interest; and
>
> (B) is the least restrictive means of furthering that compelling governmental interest.

Likewise, 42 U.S.C. §3615 (Fair Housing Act) provides that any law of a political subdivision which permits any action that would be a discriminatory housing practice is invalid. Defendants' legislative acts in authorizing the tying up of Plaintiff's religious enclave through invocation of state procedures and gimmicks was discriminatory.  The resolutions adopted by each of the Villages to expend taxpayer funds to strangle and kill the Mosdos project directly contravened the overriding federal interest in fair housing, equal protection and the free exercise of religion.[8]

---

[8]    There can be little doubt that Defendants are using process to strangle Mosdos since their best case scenario is a ruling to redo a procedure. Putting the totality of law and facts into prospective, the best that the Villages can hope to achieve in their litigation is to obtain a determination that the procedures employed resulting in the Town of Ramapo's approval of the Mosdos' use of land for a religious campus of higher education was flawed, and that the SEQRA process be done over.  In the event of such a "victory", new environment impact statements would have to be created, and there would be a public hearing aimed at discovering potential environmental impacts. The Town of Ramapo, as lead agency, would now take a hard look at the already built project, and evaluate what, if any, mitigation would be appropriate. RLIUPA would mandate approval of the facilities absent a compelling governmental interest which could not be otherwise furthered.  There is no reason to believe that the ultimate outcome would be any different than if the Town of Ramapo's existing approvals were honored.

It is well settled that the Noerr-Pennington doctrine does not apply when one seeks "to use the governmental process - as opposed to the outcome of that process- as a weapon. *Columbia v. Omni Outdoor Adver., Inc.,* 499 U.S. 365, 380, 111 S. Ct. 1344, 113 L. Ed. 2d 382 (1991). The use of legal procedure for delay is considered a sham for purposes of the Noerr-Pennington doctrine.

While Defendants' stated motive is environmental protection, the facts of this case demonstrate that that motive is feigned, and the intent of Defendants is to stop the spread of ultra-orthodox Jews. As recognized by the Supreme Court in *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977), it is the discriminatory intent of the Defendant which must be evaluated, not a feigned apparent motive. Indicia of **intent** include "the historical background of the decision," the "specific sequence of events leading up to the challenged decision," and "departures from the normal procedural" or "substantive" practices. *Id.*   Here, viewing the Defendants history of discrimination in conjunction with the facts of this case   would permit the conclusion that Defendants were motivated with discriminatory animus. Accordingly, for the reasons set forth above, the Court should deny Defendants' motion.

## POINT FOUR

### THE COMPLAINT IS NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendants argue that this suit is untimely since "each of the actions complained of" occurred more than three years ago. As discussed above, Mosdos' injury occurred only weeks before it filed suit, when it was served with process in the *Chestnut Ridge* action and enjoined from occupying the Kiryas Radin campus. It was then that the plans of the individual Plaintiffs to reside, study and/or teach at the campus were blocked. Limitation periods for civil rights violations begin running when the plaintiff knows or has reason to know that he has suffered

- 19 -

actual harm, not when he knows of a policy that will or may, in the future, give rise to that harm. *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001).

    With respect to the Yeshiva Chofetz Chaim, Inc. and its leadership, the recent actions taken by Defendants to block occupation of the completed Kiryas Radin facilities is the latest in a continuing series of activities over the years, recounted in the Complaint, which constitute a continuous practice and policy of discrimination. In that situation, action may be commenced even when the practice and policy began prior to the limitations period. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002).

## POINT FIVE

### RULE 13(a) DOES NOT REQUIRE DISMISSAL

    Defendants argue that Plaintiff's claims arise out of the "transaction or occurrence" that is the subject matter of the Villages' claims in the *Chestnut Ridge* lawsuit, and thus were "compulsory counterclaims" that had to be brought there. Fed. R. Civ. Pro. 13(a).

    The Complaint here asserts claims on behalf of two Plaintiffs and against one Village government and numerous individuals who are not parties to the *Chestnut Ridge* lawsuit. The claims here could not have been asserted by or against them in that suit, as they were non-parties.

    The claims involving parties here who <u>are</u> also parties to the *Chestnut Ridge* lawsuit were in fact asserted as counterclaims upon the removal of that case to this court.[9] Thus there is no issue of plaintiffs having waived claims. If the *Chestnut Ridge* action remains in this court (that is, if the pending motion to remand it to state court is denied), duplicative proceedings on the claims can be readily avoided, since both proceedings are in the same court before the same

---

[9]    Although a cause of action under 42 U.S.C. §1982 was not separately stated as such in the *Chestnut Ridge* counterclaim, causes of action under the Fair Housing Act, 42 U.S.C. §§3604 and 3617 were asserted upon facts that equally support liability under §1982.

judge and at a similar stage.  If *Chestnut Ridge* is remanded, Plaintiffs have the right to press

their claims, which are largely grounded in the United States Constitution and federal civil rights

law, here in federal court.[10]

Furthermore, the parallels that exist are between Plaintiffs' claims here their

counterclaims in *Chestnut Ridge*.  Plaintiffs' claims do not arise out of the subject matter raised

in the *Chestnut Ridge* complaints, but rather out of the complainants illegal attempts to deny their

civil rights.

## POINT SIX

### THE CLAIMS AGAINST NEW HEMPSTEAD WERE NOT PREVIOUSLY ADJUDICATED IN ITS FAVOR

Defendant Village of New Hempstead argues that the claims asserted in the Complaint

are barred by the *res judicata* effect of the "so ordered" Stipulation in *Yeshiva Chofetz Chaim*

*Radin, Inc. v. Village of New Hempstead*, 97 Civ. 4021 (S.D.N.Y.) (CM).

With regard to the individual plaintiffs there has been no showing of the requisite privity

for application of claims preclusion.

With regard to the Yeshiva Chofetz Chaim, the preclusive effect of the Stipulation

depends largely on its terms and the intent of the parties with regard to preclusion.  18A Wright

& Miller, *Fed. Prac & Proc.* Juris. 2d § 4443; *U.S. v. ITT Continental Banking Co.*, 420 U.S.

223, 236-7 (1975).  The intent of the parties was clearly to extricate the Yeshiva site from the

land use authority of the Village and transfer decision-making with respect to zoning and local

---

[10]   The pendency of a parallel state court action is not grounds for federal court abstention absent exceptional circumstances and the "clearest of justifications" because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Colorado River Water Construction Dist. v. United States*, 424 U.S. 800, 817-19 (1976); see *Woodford v. Community Action Agency of Greene County*, 239 F.3d 517 (2d Cir. 2001); *Dittmer v. County of Suffolk*, 146 F.3d 113 (2d Cir. 1998); *Cupe v. Lantz*, 470 F.Supp. 2d 128 (D. Conn. 2007); *Mclean-Katter v. Keegan*, 2006 WL 3050878 (E.D.N.Y. 2006).

land issues to Town of Ramapo authorities.    Accordingly, it provides that the Village

"relinquishes now and forever" any assertion that its rules apply to the Yeshiva premises, and

recognizes that the rules of the Town of Ramapo apply instead. (Stipulation, p. 2 and p. 3, ¶ 1).

It provides that the United States District Court for this District will retain jurisdiction over

enforcement and/or interpretation of its terms and its applications.

Long after entry of the Stipulation, the Village of New Hempstead has continued its

efforts to thwart the Yeshiva's development and use of the Kiryas Radin site, including efforts to

impose its own land use policies to restrict development. Its December 3, 2004 letter (Exhibit D

to Defendants' Notice of Motion) states that the Village of New Hempstead "disapproves the

plan" for Kiryas Radin and states, "we will reserve our rights regarding the S.E.Q.R.A. findings"

made by the Town of Ramapo Planning Board. It additionally makes false statements regarding

the presence of asbestos in order to block the development. Complaint ¶¶ 94-95. The Villages'

attempted efforts to control development of the site through its "disapproval" and allusion to

SEQRA rights are inconsistent with the intent of the parties to the Stipulation as reflected in its

terms.

Clearly, the Stipulation was not intended to bar claims against the Village for actions it

would take years later to block plans for a development not yet planned. The Stipulation did not

give Village officials a blank check to engage in future civil rights violations with impunity. To

the extent it carries preclusive effect, it is to establish that any interference by the Village in the

Kiryas Radin development by assertion of "New Hempstead" land use policy, regardless of its

purported justification, is a violation of the Stipulation and Order.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint should be denied.

Dated: June 16, 2008
New York, NY

*Respectfully submitted,*

Reuben S. Koolyk
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
212-715-1000

Attorneys for Plaintiff
Mosdos Chofetz Chaim, Inc.

Joseph J. Haspel
40 Matthews Street
Suite 201
Goshen, New York 10924
(845) 294-8950

Attorney for Plaintiffs

- 23 -